PEOPLE v. GERNDT.

1. CRIMINAL LAW—REQUIREMENT FOR HOLDING ACCUSED FOR TRIAL—PROBABLE CAUSE.

   The only requirement, as a condition to holding one to trial for the commission of an alleged crime, is that the testimony taken before the examining magistrate shall be such as justifies him in concluding that the crime charged has been committed, and that there is probable cause to believe the accused is the guilty party.

2. HOMICIDE—POISON—POSITIVE PROOF OF POSSESSION NOT NECESSARY—CIRCUMSTANTIAL EVIDENCE SUFFICIENT.

   It is not necessary, to conviction of murder by poisoning, that there be positive proof of the possession of poison by accused, and, therefore, its administration by him may be established by circumstantial evidence.

3. SAME—SUGGESTED POSSIBILITIES OF DEATH INSUFFICIENT WITHOUT PROOF—CIRCUMSTANTIAL EVIDENCE.

   In a prosecution for murder, the mere possibility that the deceased may have come to her death otherwise than in the manner charged in the information, especially where such

As to proof of *corpus delicti* in prosecution for homicide, see annotation in 68 L. R. A. 73, 75-78.

suggested possibility is not supported by any proof, is not sufficient to justify setting aside the verdict of the jury, notwithstanding it was based in part on circumstantial evidence.

4. CRIMINAL LAW—PROOF OF ESSENTIAL ELEMENTS OF CRIME SUFFICIENT TO TAKE CASE TO JURY.

Where the record contains proof of every essential element of the crime charged, the trial judge was right in holding that the evidence was sufficient to take the case to the jury.

5. SAME—ORDER OF PROOF—PROOF OF CORPUS DELICTI.

Objection that testimony as to other material and relevant facts was received before the *corpus delicti* had been proven was properly overruled where proof of the *corpus delicti* had been presented prior to the time said objection was made.

6. SAME—NOT NECESSARY TO ESTABLISH CORPUS DELICTI BEYOND REASONABLE DOUBT BEFORE ADMITTING PROOF AGAINST ACCUSED.

It is not necessary that the *corpus delicti* be established beyond reasonable doubt before proof is admissible tending to connect accused with the offense.

7. HOMICIDE—EVIDENCE OF TRANSACTIONS AFTER DEATH OF VICTIM ADMISSIBLE FOR BEARING ON MOTIVE.

Where accused was charged with poisoning his wife, testimony as to transactions which could logically be claimed to be a part of his plan to become possessed of his wife's property and that of her foster mother, which, under the theory of the prosecution, was his motive for killing his wife, was admissible in evidence, although said transactions occurred after her death.

8. SAME—MOTIVE—EVIDENCE—ADMISSIBILITY.

Motive may be established by proof of acts or declarations of accused subsequent to the commission of the offense.

9. SAME—EVIDENCE—ADMISSIBILITY.

In the trial of accused charged with poisoning his wife with arsenic, a motion to strike the testimony of a toxicologist that his examination of a specimen of the embalming fluid disclosed that it contained no arsenic was properly denied, where there was testimony that the specimen examined was the same kind of embalming fluid as that used in preparing deceased for burial, and was part of the same shipment, although it was taken from another container because all of the fluid in the original container was used; that it came from another container having to do with the weight of the testimony only.

10. CRIMINAL LAW—CROSS-EXAMINATION—SAVING QUESTIONS FOR REVIEW.

No exceptions having been taken or request for instructions made in regard to questions asked on cross-examination of two of defendants' character witnesses, which assumed that a judgment had been obtained against defendant in an action for fraud, it cannot be held, on review, that the asking of said questions constituted prejudicial error, especially where the trial judge sustained objection to the questions put to the first witness, and the second one answered that he had no knowledge relative to the subject-matter of the inquiry.

11. SAME—TRIAL—ARGUMENT OF COUNSEL.

Defendant may not complain of the argument of the prosecuting attorney in regard to the penalty following conviction, or that the State would have furnished funds to the necessary extent to carry on defendant's defense, where it was prompted by like argument made in behalf of defendant.

12. SAME.

In view of the statement of the trial judge that defendant's counsel had present with them in court, in the presence of the jury, a certain well-known physician to aid them in a proper cross-examination of the people's medical and expert witnesses, a statement by the prosecuting attorney, in his argument, that said physician sat with defendant's counsel and advised with him when a certain medical witness for the people was on the stand was not objectionable on the ground that there was no evidence that said physician had been employed by the defendant or had assisted as counsel.

13. SAME—REFUSAL TO GIVE REQUESTS NOT ERROR WHERE COVERED IN GENERAL CHARGE.

Refusal of the trial judge to give requests to charge in the exact form in which they were preferred was not error, where the charge as given covered the phases of the law involved in a clear and definite manner.

14. HOMICIDE—POISON—MURDER IN FIRST DEGREE.

In a prosecution for murder by poisoning, the trial judge properly instructed the jury that the verdict should be either guilty of murder in the first degree or not guilty (3 Comp. Laws 1915, § 15192).

15. SAME—INSTRUCTION THAT MOTIVE MIGHT BE CONSIDERED PROPER.
   The trial judge also properly instructed the jury that in case
   a motive for the defendant's having committed the offense
   charged was established, such motive might be considered in
   determining the guilt or innocence of accused.

16. SAME—SHOWING OF MOTIVE TENDS TO ESTABLISH GUILT.
   The showing of a motive, while not indispensable, is important
   and tends towards guilt, where the defendant denies the act.

17. SAME—WEIGHT OF EVIDENCE.
   The objection that the verdict of guilty was against the great
   weight of the evidence and was founded upon passion and
   prejudice, *held,* not sustained by the record.

Error to Berrien; White (Charles E.), J. Submitted June 22, 1928. (Docket No. 130, Calendar No. 33,782.) Decided December 4, 1928.

Arthur O. Gerndt was convicted of murder in the first degree. Affirmed.

*John J. Sterling* and *I. W. Riford,* for appellant.

*Wilber M. Brucker,* Attorney General, and *George H. Bookwalter,* Prosecuting Attorney, for the people.

NORTH, J. The defendant in this case was convicted of murder in the first degree, the charge being that he poisoned his wife, Bertha Dean Gerndt, by giving her arsenic. The deceased and her foster mother, Alice Dean, had lived in Benton Harbor for many years. The defendant, Arthur O. Gerndt, in former years had resided in the city of Chicago. His second wife died in December, 1923. He met Bertha Dean in October, 1926, a courtship followed and they were married June 15, 1927. After their wedding trip which lasted about six days they returned

to Benton Harbor and resided in the home which
Mrs. Gerndt had theretofore occupied with her foster
mother. Mrs. Gerndt at the time of her marriage
was 49 years of age, and seems to have been a person
of rather extraordinary good health. She was taken
ill on the 4th of July, 1927, but she recovered to
the extent that she was able to do some of her house-
work and a few days later made a visit with her
husband to the home of some friends. Thereafter
she continued in failing health, and her death oc-
curred on the 24th of July, 1927. Incident to this
sickness she was first attended by Dr. Taber on the
8th of July and again on the 14th and his last call
was on the 18th of July. In the meantime Mr. Gerndt
called at the doctor's office in regard to Mrs. Gerndt's
condition. When the doctor attended Mrs. Gerndt
on the 8th of July she stated to him that she could
not sleep and that her stomach bothered her; and on
the 18th she complained to the doctor of having "an
awful headache, severe pain in the back and was very
nervous." Her condition on July 24th was such
that she was attended by Dr. Spawr three times
during the day and she died about 9 o'clock that
evening. During her sickness the personal wants of
Mrs. Gerndt in the home were looked after for the
most part by her husband, no other help having been
secured until very shortly before her death. Be-
cause of certain transactions relative to the property
of Mrs. Gerndt and of her foster mother, the details
of which will be hereinafter recited, some suspicion
as to the cause of Mrs. Gerndt's death seems to
have been aroused, which resulted in the disinter-
ment of the body of the deceased on the 13th day
of August, 1927. An autopsy was held and distinct
traces of arsenical poisoning were discovered. The
body was again exhumed September 22d and upon

further examination it was found that the small intestines contained 8.7 grains of arsenic. The undisputed proof is to the effect that there was no arsenic in the embalming fluid used on the remains of the deceased, and the doctor testified that there was no arsenic in any of the medicines prescribed by him.

Arthur O. Gerndt was substantially of the same age as the deceased. It is the theory of the prosecution that in marrying Bertha Dean and in bringing about her death by arsenical poisoning the defendant was carrying out a plan by which he hoped to possess himself of her property and also that of the foster mother. Prior to the marriage Alice Dean was the owner of the residence which these parties occupied. It was substantially of the value of $7,000. She had mortgages aggregating $7,800, and the deceased had money invested in mortgages to the amount of $10,000. These two women also had in savings deposits over $1,300. The record discloses that about the first of March, 1927, the defendant obtained possession of a will which Mrs. Dean had made. He caused another will to be prepared by a Chicago attorney by the terms of which Mrs. Dean provided that her property, with the exception of $100 to her brother, should be left to Bertha Dean Gerndt and Arthur Otto Gerndt. This will purports to have been executed on the 14th of June, 1927, although the marriage of Mr. and Mrs. Gerndt did not occur until the 15th. Also on or before the 14th of June, Bertha Gerndt executed a will which the defendant had brought with him from Chicago by the terms of which he was made the sole beneficiary. The defendant also made a will in which his wife was named as his sole beneficiary. And on June 14, 1927, Alice Dean, a lady then 80 years of age, executed a deed

by which the residence occupied by these people in Benton Harbor was conveyed to the defendant and his wife Bertha. A life lease back to Mrs. Dean was executed at the same time. Also, on June 14th, the day before their wedding, the defendant and Bertha Dean went to the Benton Harbor State Bank and made an arrangement whereby the defendant shared with his prospective wife the rights of a safety deposit box which contained all of the securities of both Bertha Dean and Alice Dean. Within a week after returning from the wedding trip the defendant rented a safety deposit box in the American National Bank and he and his wife caused all of the papers theretofore deposited in the Benton Harbor State Bank to be transferred. This seems to have been done without the knowledge or consent of Mrs. Alice Dean. Bertha Dean Gerndt was buried on the 27th of July, 1927; and on the 3d of August, 1927, Mr. Gerndt caused the savings accounts which had theretofore stood jointly in the names of Mrs. Dean and his wife to be changed to the joint account of himself and Mrs. Dean. Incident to this transaction he obtained the signature of Mrs. Dean to an identification card; and two checks were used which purport to have been signed by her, but she denied the genuineness of these two signatures. The day after the funds in these savings accounts were deposited jointly to the credit of Mr. Gerndt and Mrs. Dean, she caused them to be withdrawn and placed in a certificate of deposit in the name of herself and a Mr. Miller. At the time the defendant had the joint savings account opened in the name of himself and Mrs. Dean, he had brought about a condition by various manipulations whereby he was either the prospective legatee or had become actually possessed of all the property formerly held by both

Mrs. Alice Dean and Miss Bertha Dean with the exception of the life estate which Mrs. Dean had retained in her former home. As noted above, the aggregate value of this property was substantially $26,000.

At the close of the examination held before the magistrate, a motion was made in behalf of the defendant that he be discharged on the ground that there was no evidence that a murder had been committed, or that he was guilty of the crime charged. This motion was denied, and the defendant was held for trial in the circuit court. Upon arraignment he stood mute, later a motion was made to quash the information, and again it was urged in behalf of the defendant that the testimony taken before the examining magistrate was not sufficient to justify the determination that there was probable cause to believe the deceased had been murdered, or, if so, that the crime had been committed by the defendant. The circuit court's denial of the defendant's motion to quash is now urged as a ground of error. The testimony taken before the examining magistrate is contained in the record filed in this court. A careful reading of the same convinces us that the ruling of the circuit judge was correct. At the examination the death of Bertha Dean Gerndt was admitted. The testimony of Charles E. Weaver, a toxicologist, that in his opinion sufficient arsenic was found in the body of the deceased to cause her death was undisputed. Dr. Taylor, who was present at the autopsy performed on the body of Bertha Gerndt, testified that so far as he ascertained from the examination he made the vital organs of the deceased appeared to be in a healthy condition. No other cause of death than arsenical poisoning was disclosed. There is no ground for asserting that there was lack of

proof of the *corpus delicti*. Testimony was also taken disclosing the opportunity which the defendant had to administer the poison, and as to the property manipulations hereinbefore recited which were indicative of a motive on the part of the defendant for committing the crime. There was also testimony of statements made by him before the results of the examination of the body were known which strongly tend to indicate that he anticipated he would be suspected and charged with the offense. He stated he supposed he would need a bondsman and that he had employed an attorney. No testimony was developed which in any way indicated that the death of Mrs. Gerndt was accidental or suicidal; nor was there any indication of a motive for any other person than the defendant administering to her the poison which caused her death. It has been so often stated it seems unnecessary to repeat that the only requirement, as a condition to holding one to trial for the commission of an alleged crime, is that the testimony taken before the examining magistrate shall be such as justifies him in concluding the crime charged has been committed, and that there is probable cause to believe the accused is the guilty party. *People* v. *Rice,* 206 Mich. 644. The testimony taken before the examining magistrate measured up to this requirement.

The appellant has also presented and urged the contention that the proof at the trial in the circuit was not sufficient to justify submitting the case to the jury, it being particularly stressed that there was no evidence tending to show the defendant possessed any arsenic or that he administered any to the deceased. This contention was made incident to the defendant's motion for a directed verdict and also incident to his motion for a new trial. While

there was no direct testimony that the accused possessed arsenic or that he administered this poison to the deceased, it does not follow that there could not be a conviction based upon circumstantial evidence. To hold otherwise is to say that a prosecution for murder accomplished by poisoning cannot be successfully maintained unless there is direct and positive proof that the accused had the poison in his possession and that he administered it to the deceased, thereby committing the crime charged. Such is not the law. If it were, in most cases murder by poisoning could be committed with impunity. In *People* v. *Kuhn,* 232 Mich. 310, it was held that positive proof of possession by the accused of the poison used was not necessary. It follows that the administration of the poison by the accused to the deceased may be established by circumstantial evidence. The facts and circumstances which resulted in a retrial of the *Kuhn Case* readily distinguish it from the case at bar in so far as the question of motive is concerned.

This record discloses that prior to her last illness, which lasted three weeks, Bertha Dean Gerndt was an active, healthy woman. She had not been seriously ill for at least twelve years. The undisputed testimony of the doctor who made a pathological examination of the deceased was to the effect that the symptoms incident to her final illness indicated the cause of her death was:

"That the patient had received small doses of arsenic which did not kill and then died from the larger dose administered a relatively short time before death."

In his cross-examination the following appears:

"*Q.* The conditions you found in this body are peculiar to arsenic and no other poison?

"*A.*   The whole condition here is explained only by arsenic and no other.

"*Q.*   Are you positive of that doctor?

"*A.*   Yes, I am positive of that."

This testimony was corroborated by proof that the toxicological examination revealed the presence of 8.7 grains of arsenic in the small intestines of the deceased and that this poison was found in practically all of the organs of her body. The theory of the prosecution that the defendant was chargeable with the alleged homicide was sustained by ample proof of a motive and of an opportunity to commit the crime in the manner charged; and facts and circumstances proven in the record tend to negative the claim of the defendant that the poison may have been administered to the deceased by others or that it may have been taken accidentally or with suicidal intent. The mere possibility that the deceased may have come to her death otherwise than in the manner charged in the information, especially since such suggested possibility is not supported by any proof in the case, is not sufficient to justify setting aside the verdict of the jury, notwithstanding the same was based in part on circumstantial evidence.

"If circumstantial evidence satisfies the mind, then it is equal to positive evidence, because it produces the same effect." *People* v. *Vanderpool,* 1 Mich. N. P. 264.

See, also, *People* v. *Harris,* 136 N. Y. 423 (33 N. E. 65).

The record contains proof of every essential element of the crime charged. The trial judge was right in holding there was an abundance of evidence

to take the case to the jury. Incident to denying the defendant's motion for a new trial, he said:

"I am of the opinion that there was ample evidence to submit the question of the respondent's guilt to the jury and I do not see how the jury could have arrived at any other verdict than the one of guilty of murder in the first degree."

Complaint is made as to the order of proof. It is urged by the defendant that testimony as to other material and relevant facts was received before the *corpus delicti* had been proven. An examination of the record clearly discloses that the objection on this ground was properly overruled because proof of the *corpus delicti* had been presented prior to the time this objection was made. And further, it is not necessary that the *corpus delicti* should be established beyond a reasonable doubt before proof is admissible tending to connect the accused with the offense. *People* v. *Trine,* 164 Mich. 1.

There are 25 assignments of error based upon alleged erroneous rulings as to the admissibility of evidence. It is asserted by the defendant that prejudicial error was committed in allowing the people to prove certain transactions which affected the bank accounts of the deceased and her foster mother and also others affecting the title to real estate formerly owned by Mrs. Alice Dean. The objection urged was that these transactions occurred after the death of Bertha Dean Gerndt and therefore could not be proof of motive, and that they were neither relevant nor material to the issue being tried. As before stated, it was the theory of the prosecution that the motive which induced the commission of the alleged offense was that the defendant might become possessed of the property of both his wife and her foster mother. Any act of the defendant which could

logically be claimed to be a part in the execution of this plan was material, regardless of whether it was prior or subsequent to the commission of the crime charged. The act of the defendant in causing the two bank accounts to be changed promptly after the death of his wife so that the funds were payable either to Mrs. Dean or himself was thus relevant and material. For the same reason other acts of the defendant affecting property rights were admissible, although they were subsequent to the death of Mrs. Gerndt. Motive may be established by proof of acts or declarations of the accused subsequent to the commission of the offense. *People* v. *Buchanan*, 145 N. Y. 1 (39 N. E. 846) ; 30 C. J. p. 187.

Error is assigned because of the denial of the motion to strike from the record the testimony of the toxicologist that his examination of a specimen of the embalming fluid disclosed that it did not contain any arsenic. This motion was based on the fact that the sample examined was not taken from the same container as was that used in preparing the remains of the deceased for burial. All the embalming fluid in that particular container was used in preparing the body of Mrs. Gerndt, and hence it was not possible to analyze a sample from this same container. There was testimony that the portion analyzed was the same kind of embalming fluid as used by the undertaker in this case, that it was purchased from the same source, and was a part of the same shipment. The motion to strike was properly denied. The fact that the sample of the fluid analyzed was taken from another container had to do with the weight of the testimony only. *Commonwealth* v. *Goodman*, 97 Mass. 117.

Error is also claimed because certain questions were propounded to the defendant's character wit-

nesses on cross-examination by the prosecuting attorney. These questions embodied the assumption that a judgment had been obtained against Gerndt in a suit wherein he was charged with having perpetrated a fraud. The objections made to the questions as put to the first witness were sustained by the circuit judge. The answer of the second witness was that he had no knowledge relative to the subject-matter of the inquiry. No exception was taken because of the questions having been asked by the prosecutor, nor was the court requested to instruct the jury to disregard the statement or inference contained in the questions. Under such a record, the asking of these questions cannot now be held to have constituted prejudicial error. We have given careful consideration to the other assignments of error relating to rulings as to the admissibility of evidence, but do not find prejudicial error in any of them.

Various assignments of error are based upon statements or remarks contained in the closing argument of the prosecuting attorney. The record discloses that this case was tried rather vigorously, and that the prosecuting attorney's closing argument contained certain improper statements. However, most of the objections made by defendant's counsel were promptly sustained and the jury instructed to disregard the objectionable remarks of the prosecuting attorney. In so far as his argument referred to the matter of the penalty which might follow a conviction, or the fact that the State would have furnished funds to the defendant to the extent necessary to carry on his defense, the record discloses that this was in the nature of a reply to statements made by defendant's counsel relating to these same subjects. The argument of the prosecuting attorney in this regard having been prompted

by like arguments made in behalf of the defendant, he cannot be heard to complain. *People* v. *Powers,* 203 Mich. 40.

During the course of his argument the prosecuting attorney stated to the jury:

"Dr. Sowers sat with my brother when Dr. Warthin was on the stand and advised with him."

To this an objection was made on the ground that there was no evidence that Dr. Sowers had been employed by the defendant or had assisted as counsel. This circumstance was embodied as one of the reasons in support of the defendant's motion for a new trial. In disposing of this motion the trial court said of this incident:

"During the examination of the people's medical and expert witnesses, respondent's counsel had present with them in court to aid them in a proper examination of the people's witnesses Dr. Sowers, a well known physician of Benton Harbor, Michigan. All this took place in the presence of the jury. When the prosecuting attorney referred to the presence of Dr. Sowers during the trial he was referring to a fact that actually occurred during the course of the trial in the presence of the jury. No error can be assigned on these remarks by the prosecuting attorney."

In view of this statement of the situation the argument of the prosecuting attorney was not improper. We find nothing in this phase of the record constituting prejudicial error.

Various assignments of error are based upon the refusal of the court to give certain of defendant's requests to charge, and error is also claimed because some of the defendant's requests were given in a modified form. The requests which were refused

related to the burden of proof, the measure of proof required to justify a verdict of guilty, and, further, to the proposition that the verdict of the jury cannot be based upon speculation, conjecture, or guess, but upon the evidence alone and each link in the chain of circumstantial evidence must be established beyond a reasonable doubt. The charge as given covered each of these phases of the law in a clear and definite manner. The refusal of the court to give the requests in the exact form in which they were preferred was not error. *People* v. *Jonesi,* 223 Mich. 32; *People* v. *Dunn,* 233 Mich. 185. The modifications of the defendant's requests of which complaint is made were justified.

None of the errors assigned relative to the denial of requests to charge or to the charge of the court as given are well founded. The court correctly stated to the jury: "When murder is perpetrated by means of poison" it is murder in the first degree. The statute so provides. 3 Comp. Laws 1915, § 15192. It was therefore proper to charge the jury in this case that the verdict should be either "guilty of murder in the first degree or not guilty." The charge of the court was also correct wherein it was stated that in case a motive for the defendant's having committed the offense charged was established, such motive might be considered in determining the guilt or innocence of the accused.

"The showing of a motive, while not indispensable, is important and tends towards guilt, where the defendant denies the act." *People* v. *MacGregor,* 178 Mich. 436.

The denial of the defendant's motion for a new trial is assigned as error. Many of the reasons urged in support of this motion have been considered

hereinbefore, but it is there further asserted, and also assigned as error in this record, that the verdict of the jury was against the great weight of the evidence and was founded upon passion and prejudice. We find nothing in the record which justifies either of these contentions. In our judgment the defendant was given a fair trial in the circuit court and there was sufficient evidence to justify the verdict rendered by the jury. We have given careful consideration to other questions raised by the assignments of error, but find nothing in them which would justify the granting of a new trial or which merits further comment.

The conviction of the defendant and judgment of the lower court must be affirmed.

FEAD, C. J., and FELLOWS, WIEST, CLARK, MC-DONALD, and SHARPE, JJ., concurred. POTTER, J., did not sit.