## PEOPLE v. FRANSZKIEWICZ.

1. HOMICIDE—POSSIBILITIES OF DEATH—CIRCUMSTANTIAL EVIDENCE.
   In a prosecution for murder, the mere possibility that deceased may have come to his death otherwise than in the manner charged in the information, especially where such suggested possibility is not supported by any proof, is not sufficient to justify setting aside the verdict of the jury, notwithstanding it was based in part on circumstantial evidence.

2. SAME—ARSENIC—POISONS—TOXICOLOGIST'S EXAMINATION.
   In prosecution for murder of defendant's husband whose body was exhumed six months after death, vital organs removed, contents analyzed, fact that examining toxicologist examined only parts of some of the organs, assumed arsenic was evenly distributed, and computed amount of final total of arsenic found by multiplication was not error where amount so found was four times lethal dose, thereby negativing idea disorder was chronic rather than acute, another doctor testified that his examination showed heart disease did not cause death as official certificate had given, and it does not appear that the arsenic came from embalming fluid used.

3. SAME—POISON—ARSENIC—CIRCUMSTANTIAL EVIDENCE.
   In prosecution for murder of defendant's husband by poisoning with arsenic, it was not fatal to prosecution's case that instead of showing recent possession of arsenic, the testimony only disclosed defendant bought rat poison some 18 months before, such circumstance affecting weight of the testimony in view of testimony as to condition of deceased before he died, his seeming to suffer from pain in the stomach, pallor, and other symptoms indicating acute arsenic poisoning.

4. SAME—POISONS—ARSENIC—QUESTION FOR JURY.
   In prosecution for murder of defendant's husband by poisoning with arsenic, testimony was ample to make case for jury where possession of arsenic by defendant was shown, as was motive, and condition of deceased before he died indicating symptoms of acute arsenic poisoning.

5. SAME—POISONS—ARSENIC—EVIDENCE—EXHUMATION.
   Testimony obtained by exhumation and examination of body of defendant's husband was admissible in prosecution for his

murder by poisoning with arsenic where prosecuting attorney
ordered sexton to disinter body and deliver it to the parlors
of the funeral director who embalmed the body, and autopsy
was then conducted from which examination arsenic was dis-
covered, notwithstanding there was a failure to comply with
statutes relative to disinterment of bodies and inquests by
coroners or justices of the peace (3 Comp. Laws 1929,
§§ 17403, 17414, 17417).

6. SEARCHES AND SEIZURES—DEAD BODIES—PROPERTY.

Evidence, obtained by exhuming a body and holding an autopsy
thereon without complying with statutes relative to disin-
terment of bodies and holding of inquests by coroners or
justices of the peace, for use in prosecution of one charged
with murder of her husband, is not contrary to constitutional
prohibitions of searches and seizures since there is no prop-
erty right in a dead human body (3 Comp. Laws 1929,
§§ 17403, 17414, 17417).

7. CORPSES AND BURIAL—PROPERTY RIGHT.

The next of kin do not have a property right in a dead human
body which bars obtaining evidence therefrom for use in
prosecution for murder.

8. HOMICIDE—DYING DECLARATION—IMPENDING DEATH.

Testimony as to statement of deceased husband, for whose murder
by poisoning with arsenic defendant was being prosecuted,
made the second day before he died, that he was in terrible
pain, his insides were burning up, that he felt he was ''leav-
ing,'' and that he did not ''know what *she* is giving'' him
was properly admitted as a dying declaration since it showed a
sense of impending death, victim's condition and symptoms,
and ''she'' was clearly identifiable from the context as de-
fendant.

9. SAME—DYING DECLARATION—IMPENDING DEATH.

Testimony of statements by deceased on his trip to the doctor
the day he died to show how he was suffering and which
included ''I think I am going six feet under the ground'' was
properly admitted in prosecution of deceased's wife for his
murder as a dying declaration showing a sense of impending
death.

10. SAME—ARSENIC—EVIDENCE—EMBALMING FLUID.

In prosecution of one charged with murder of her husband by
poisoning with arsenic in which it was claimed by defendant

that the arsenic found in body which was exhumed six months after burial came from embalming fluid, testimony as to analysis of samples of such fluid taken from same case as that used in preparing victim for burial was not immaterial or incompetent.

11. SAME—ARSENIC—EVIDENCE—RAT POISON.

In prosecution of one charged with murder of her husband by poisoning with arsenic wherein it was shown defendant had purchased rat poison some 18 months before crime charged was committed, testimony as to analysis of rat poison by druggist from whom defendant had made her purchase that the sample of rat poison of which analysis, showing it to be arsenic trioxide, was offered in evidence was purchased from the same source and was a brand with which druggist was familiar was not immaterial or incompetent.

12. SAME—CAUSE OF DEATH—BASIS FOR HYPOTHETICAL QUESTION.

In prosecution for murder of defendant's husband whose body was exhumed six months after burial, testimony preceding hypothetical question asked of a doctor as to cause of death on which to base such query was sufficient where another doctor had previously testified as to the symptoms of death.

13. CRIMINAL LAW—ARGUMENT OF PROSECUTING ATTORNEY—EVIDENCE.

Argument of prosecuting attorney in reply to defendant's attorney and justified by the testimony of defendant was not prejudicial error.

14. HOMICIDE—MOTIVE—INSTRUCTIONS.

In prosecution for murder of defendant's husband, trial court was not in error in instructing jury that the element of motive was not indispensable in a charge of murder.

Appeal from Menominee; Bell (Frank A.), J. Submitted April 16, 1942. (Docket No. 91, Calendar No. 41,944.) Decided June 10, 1942. Rehearing denied September 8, 1942.

Victoria Franszkiewicz was convicted of murder. Affirmed.

*George Barstow* (*Ditchburne & Lounsbury* and *Doyle & Doyle,* of counsel), for appellant.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Michael Anuta,* Prosecuting Attorney, for the people.

North, J.   Defendant appeals her conviction for the murder of her husband, Romold Franszkiewicz, whose death occurred July 21, 1940. She married him in 1935. Both were advanced in years and both had been married before. They lived on a farm in Nadeau township, Menominee county.

At the time of deceased's death there seems to have been no suspicion of foul play. No inquest was ordered; and the official certificate gave heart trouble as the cause of death. However, on January 18, 1941, a petition was filed before a justice of the peace in Menominee for an order providing for the disinterment of the remains of deceased. The justice entered such an order on the same day. There was disinterment and an autopsy was performed. Dr. K. C. Kerwell removed the heart, part of the liver, spleen, kidneys, stomach and part of the intestines. These were delivered by a deputy sheriff to Drs. Weller and Emerson at University Hospital at Ann Arbor for analysis. Testimony was given by Dr. Emerson that enough arsenic was found in the body of deceased to be fatal, "about four times the average lethal or killing dose."

It appears deceased suffered from diarrhea as early as May, 1940, and that this condition may be caused by arsenic. He consulted a doctor on July 10, 1940. But he seemed to undergo his most intense suffering shortly prior to his death. The day before his death he was taken to another doctor; and to still another doctor on the day of his death.

There was evidence as to motive. There was testimony that defendant in certain instances exhibited intense dislike for deceased; and that she

wanted her son by her first husband to live with her but that deceased objected. The prosecution also charged that she might have been motivated by a desire to acquire deceased's farm and that she endeavored, though unsuccessfully, to get some insurance on deceased's life. Also, it was shown that defendant had bought some rat poison about a year and a half before deceased's death; and similar poison showed arsenic on analysis. A jury found defendant guilty of murder in the first degree and she was sentenced to solitary confinement at hard labor for life.

Defendant charges the trial court committed some eight errors, on which she bases this appeal. First, it is contended that no corpus delicti was proved. The objection here is based chiefly on two grounds. The first is that it was not shown the arsenic did not come into decedent's system through some innocent means, as by the embalming fluid. The second is that the examining toxicologist, Dr. Emerson, only examined parts of some of the vital organs and then proceeded by multiplication to compute the amount of arsenic in the entire organ; that he thus got his final total of arsenic by assuming it was evenly distributed. As to the first argument, *People v. Gerndt,* 244 Mich. 622, 632, holds:

"The mere possibility that the deceased may have come to her death otherwise than in the manner charged in the information, especially since such suggested possibility is not supported by any proof in the case, is not sufficient to justify setting aside the verdict of the jury, notwithstanding the same was based in part on circumstantial evidence."

Also, in this case, the fact there was enough arsenic found to be fatal to four persons negatives the idea the disorder was chronic rather than acute. The pathologist and toxicologist both testified to in-

dications of breakdowns of some of the vital organs and discounted the contention that the effect in the present case might have arisen from chronic, cumulative poisoning. Dr. Weller also testified his examination showed heart disease did not cause the death. If defendant wished to have more testimony in regard to the content of the embalming fluid, she should have procured it in her own behalf. Dr. Emerson testified that the arsenic he found could not have come from embalming fluid.

As to the charge that the computation of the total amount of arsenic was based on assumption and inference, *People* v. *Kuhn,* 232 Mich. 310, holds that the method used in the instant case is proper. Dr. Emerson testified each organ contains an even distribution. The *Gerndt Case, supra,* also holds that the possession by defendant of the poison need not be shown positively. It was not fatal to the prosecution's case that instead of showing recent possession of arsenic, the testimony only disclosed defendant bought the rat poison some 18 months before the time of the alleged crime. This circumstance only went to the weight of the evidence. The condition of deceased before he died, his seeming to suffer from pain in the stomach, pallor, et cetera, indicated symptoms of acute arsenic poisoning. The testimony was ample to make a case for the jury's determination.

The second charge of error relied on by defendant is that the autopsy and disinterment of deceased failed to follow statutory direction and so the evidence gained thereby was inadmissible. Statutes provide for coroners holding inquests and provide for disinterment of bodies (3 Comp. Laws 1929, §§ 17414, 17417 [Stat. Ann. §§ 28.1180, 28.1183]) and for justices of the peace doing so in some instances (3 Comp. Laws 1929, § 17403 [Stat. Ann. § 28.1169]).

In the present case there was a complaint filed with a justice of the peace of Menominee, Michigan. The latter ordered the sheriff to disinter the body so an inquest might be held. No such inquest appears to have been held. Instead, the prosecuting attorney ordered the sexton of the cemetery to disinter the body and deliver it to the parlors of the funeral director who had embalmed the body. An autopsy was then conducted by a physician who removed certain organs and put them in sealed jars. These were taken to University Hospital at Ann Arbor for analysis. The question is whether the results of analysis of the organs so obtained are admissible.

There seem to be no Michigan cases on this point. However, the question has come up in other jurisdictions. In *Commonwealth* v. *Grether*, 204 Pa. 203 (53 Atl. 753), the Pennsylvania supreme court held:

"The third, fourth, and fifth (assignments of error) * * * relate to the exhumation and examination of the body of the deceased, alleged to have been unlawful because not conducted by the coroner, or under his direction. The rights and duties of the coroner were not involved in the examination of the body, which was made at the instance and under the direction of the district attorney for the purpose of being able to submit to the jury conclusive evidence that a bullet from the pistol of the prisoner had caused the death charged to him. Such evidence it was the right, as well as the duty, of that officer to procure, if it existed, without regard to anything the coroner may have done or omitted to do."

This theory is found in *Commonwealth* v. *Taylor*, 132 Mass. 261, which holds that the testimony of a qualified medical examiner as to what he found upon making an autopsy is not rendered incompetent by the fact that in making the autopsy he proceeded

without authority and not in strict compliance with the statute. Underhill's Criminal Evidence (4th Ed.), § 547, states such evidence is competent though some minor statutory details were not observed in holding the autopsy. In *Streipe* v. *Hubbuch Bros. & Wellendorf,* 233 Ky. 194 (25 S. W. [2d] 358), the Kentucky court of appeals held that evidence of physicians attending an autopsy is admissible even if the inquest was illegally held, and that such evidence is not contrary to constitutional prohibitions of searches and seizures since there is no property right in a dead human body. *Keyes* v. *Konkel,* 119 Mich. 550 (44 L. R. A. 242, 75 Am. St. Rep. 423), likewise holds the next of kin does not have such a property right. We are not in accord with appellant's contention that because of irregularities incident to the autopsy or the failure to have a formal inquest the testimony obtained by the autopsy was inadmissible, for the same reason that testimony obtained by the unlawful use of a search warrant is held to be incompetent and inadmissible. Instead, we hold that the testimony obtained from the autopsy in the instant case was admissible.

The next error charged by the defendant has to do with admission of certain testimony by the trial court. Witness Haas testified for the prosecution that he visited deceased the second day before he died; that deceased told him he was in terrible pain, his insides were burning up, that he felt he was "leaving," and that he did not "know what she is giving" him. This was offered as a dying declaration. Defendant objected. It was admissible since it shows a sense of impending death and it shows his condition and symptoms; the "she" is clearly identifiable from the context as defendant though deceased did not then say so. Nor was it error to admit testimony of statements by deceased on his

trip to the doctor the day he died to show how he was suffering. It was on this occasion deceased said: "I think I am going six feet under the ground." *People* v. *Arnett*, 239 Mich. 123; *People* v. *Gorman*, 252 Mich. 603.

The fact that the embalming fluid and the rat poison analyzed were of then obtainable samples and not conclusively proven to be the same as that used or purchased was a circumstance for the jury to weigh. There was testimony by the embalmer who took charge of the remains of deceased that the embalming fluid examined was "out of the same case" as that he used; and the druggist from whom defendant purchased testified that "Rough on Rats" is a "patent medicine" and "It is presumed that it is arsenic trioxide;" and further the sample of which the analysis was offered in evidence was purchased from this same source and was a brand with which the druggist was familiar. Testimony in these respects was not immaterial or incompetent. Nor is there a lack of testimony preceding the hypothetical question asked Dr. Weller as to the cause of death of deceased on which to base such a query; Dr. Sawbridge had testified earlier as to the symptoms. We find no errors in other rulings on admissibility of testimony as claimed by defendant.

It is charged that the prosecuting attorney's conduct and remarks during the trial and argument were prejudicial. The prosecutor did press his case vigorously. However, as the trial judge said in his opinion denying a motion for a new trial, much of that argument was in reply to what had been said by the attorney for defendant, which the trial judge said was one of the most forceful arguments ever heard in his court room. It does not appear to us that the prosecutor went outside of the record to de-

fendant's prejudice. Argument of the prosecutor in reply to defendant's attorney and justified by the testimony of defendant was not prejudicial error. *People* v. *Powers*, 203 Mich. 40; *People* v. *Gerndt, supra.* While "lack of virtue" was a poorly chosen phrase for the prosecutor to use to describe defendant's proneness to use profanity and her acts in mistreating her husband, it was not such a transgression as would justify granting another trial. And the same may be said of the incident in the prosecuting attorney's closing argument when he said to the jury: "Is it the conduct of an innocent woman to call the witnesses what she did while they were on the stand?" While defendant's testimony on cross-examination was undisputed wherein she said she had not called the people's witnesses a certain vile epithet, she did on cross-examination in referring to one of the people's witnesses say: "I say that is lie—she wanted from me one thousand dollars and she know." The prosecutor's deviation from the literal context of the record could not have prejudiced the jury and was not sufficient to justify reversal in this case.

Defendant's other claims of error have been considered and found to be without merit. The trial court was not in error in instructing the jury that the element of motive was not indispensable in a charge of murder (*People* v. *Cipriano,* 238 Mich. 332), and further, as above stated, there was in the instant case testimony tending to establish motive. Also, as above noted, the circumstances under which the autopsy was performed did not render the evidence thus obtained inadmissible. Our consideration of the record satisfies us that the verdict of the jury was sustained by the evidence. The fact that various witnesses contradicted themselves

merely entered into the question of credibility which was for the jury. We think defendant had a fair and impartial trial; and her conviction and the judgment of the circuit court are affirmed.

CHANDLER, C. J., and BOYLES, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., took no part in this decision.