PEOPLE *v*. McCLINTIC.

1. Perjury—Warrant—Grounds—Justices of the Peace—Preliminary Examination.

> Respondent was charged with perjury for giving false testimony relative to the purchase of intoxicating liquors from a colored person who was accused of unlawfully furnishing intoxicating liquors. Respondent was given two marked one dollar bills and entered the pool room of the accused and returned with two pints of whisky, which he stated that he bought of the accused. He made a sworn statement to that effect when the warrant was issued. Later, he gave evidence on the examination that he did not purchase the whisky of accused and did not pay him the marked bills which he had received. The people produced evidence that tended to show the contradictory statements of respondent on the two occasions and that he had informed certain witnesses of the purchase of the whisky. The justice of the peace who issued the warrant testified to the statements made by respondent at the time of issuing the warrant. They were not reduced to writing. *Held*, that the object of the examination before the justice, under 3 Comp. Laws 1915, § 15666, is to determine the sufficiency of the ground for a warrant and the evidence need not be written down, also that there was evidence which required the submission of the case to the jury.

2. Same—Criminal Law—Trial.

> Contradictory statements, whether made under oath or not, do not authorize a conviction for perjury, although the additional testimony of another witness to the falsity of the statement is not required if the truth may be inferred from the combined facts proven. The prosecution, however, must prove which of the two statements is false and by other evidence than the contradictory statements.

3. Same—Intent—Trial—Charge—Materiality.

> *Held*, that the jury should have been instructed on the point whether or not perjury was committed at the time laid in the information, *i. e.*, the evidence given by respondent when he was called as a witness or whether re-

spondent swore untruthfully on the prior occasion, and that wilful false swearing before the magistrate upon a material matter before the complaint had been made would constitute perjury.

4. SAME—EVIDENCE—JURY QUESTION.

Testimony of the respondent that he was frightened or cajoled by the officers and by the justice of the peace before whom complaint was made into swearing to the same, and by the use of third degree methods, and, in effect, that his testimony at the subsequent examination was true, presented a proper issue for the jury.

5. SAME—REQUESTS TO CHARGE—REASONABLE DOUBT.

The court, in giving his instructions to the jury, should have granted respondent's request to charge that, in considering the guilt or innocence of the respondent, before they could convict they must find that the people have proved beyond a reasonable doubt in their minds that the matters sworn to were false in fact and that they must find the respondent did go to the place of business in question and purchase the whisky as charged; further, that they could not find the respondent guilty of testifying falsely upon the testimony of one witness whose testimony is given to prove the falsity of the statement; that in addition to the statement of the witness strong corroborating circumstances of such a character as would clearly turn the scale and overcome the oath of the party accused must be shown.

6. SAME—TRIAL—CHARGE.

If the preliminary testimony made it clear that the statement claimed to have been made was voluntary or involuntary it was the duty of the trial court to admit or reject it; if the matter was left in doubt, it was the duty of the court to admit it and leave the question to the jury under proper instructions to determine whether it was voluntarily made; the jury should have been explicitly advised on this issue.

7. SAME—PRESUMPTION OF INNOCENCE—INSTRUCTIONS.

The court did not substantially cover the subject of the presumption to be considered, by telling them that the burden rested on the prosecution and the accused came into court clothed with the presumption of innocence, and he stands innocent in their minds until the people, through the prosecuting attorney, had convinced them of his guilt

beyond a reasonable doubt; that a reasonable doubt meant a doubt which a reasonable man might have, not a captious doubt; that the matter did not require mathematical exactness, but the people must prove beyond a reasonable doubt that respondent was guilty, etc.

Error to Ingham; Collingwood, J. Submitted October 12, 1916. (Docket No. 125.) Decided December 21, 1916.

Nelson McClintic was convicted of perjury. Reversed.

*Grant Fellows*, Attorney General, *William C. Brown*, Prosecuting Attorney, and *J. Arthur Boice*, Assistant Prosecuting Attorney, for the people.

*W. J. Carbaugh* and *S. B. Roe*, for respondent.

STONE, C. J. The defendant was charged with, and convicted of, the crime of perjury, alleged to have been committed on April 7, 1916, at the city of Lansing, on the examination of one Theodore De Meaux, at a court held by Charles F. Haight, a justice of the peace, the said De Meaux being charged before said justice, on the complaint of one Frank Eurek, with the offense of unlawfully furnishing intoxicating liquor to the defendant herein, on March 24, 1916, at the city of Lansing, in violation of Act No. 207, Pub. Acts 1889, as amended.

The information in the instant case charges that upon such examination before said justice it then and there became and was a material question whether the said De Meaux did, on March 24, 1916, sell certain intoxicating liquor, to wit, whisky, to the defendant herein, and whether the defendant then and there paid to said De Meaux any money for the said whisky.

No question is raised as to the sufficiency of the information, nor is it denied that upon such criminal

examination the defendant herein, in substance, testified that he did not purchase any intoxicating liquor from the said De Meaux at the time and place stated; nor is it denied that he, in substance, testified that he did not give or pay any money to the said De Meaux at the time and place alleged. It is conceded that such testimony was material to the issue. The matters which preceded this examination become material.

It is the claim of the people that, on the evening of March 24, 1916, the defendant was given two marked $1 bills by one Carl Hambruck; that they went together to the pool room of said De Meaux, in the city of Lansing; that this defendant went into the pool room of said De Meaux with said money and soon thereafter came out with two pints of whisky, which he said he purchased from De Meaux with the $2; that Police Officer Eurek, who had marked the bills and had furnished them to Hambruck, and who saw the defendant go into De Meaux's place and come out again, and who took the liquor from him afterwards, went the same evening before Charles F. Haight, a justice of the peace of the city, and made, signed, and swore to a complaint against said De Meaux, charging him with having furnished whisky to the defendant; that the defendant, after such complaint was made and before the warrant was issued, went before the said justice and was there sworn and examined as to the matters charged in the complaint, and testified that he had that evening purchased two pints of whisky from said De Meaux, for which he paid said De Meaux $2. A warrant was issued upon the complaint and examination, and said De Meaux was immediately arrested. The people claimed that, at the time of his arrest, De Meaux was seen to throw these marked bills into his woodpile, and later claimed the money was his and took it; that defendant stated, not only on oath before said justice, but also to Eurek and one Mer-

rick, that he had purchased two pints of whisky from said De Meaux on the occasion in question, and had paid him $2 for it. Then, on said April 7th, came the examination before the justice, above referred to, in which it is claimed by the people that defendant committed perjury in swearing that he did not purchase any liquor from, or pay any money to, said De Meaux on March 24, 1916. This is a case where it is claimed that defendant first swore before the justice that he had purchased intoxicating liquor from Theodore De Meaux, and did pay him $2 therefor; and later, upon the occasion charged as perjury, he swore that he did not purchase intoxicating liquor from said party. and did not pay him any money

It becomes important to examine the evidence as to whether defendant was sworn and examined in support of the complaint by the justice before the warrant was issued.

Upon the trial of the instant case, Charles F. Haight, the justice, was sworn. He testified as follows:

"I am justice of the peace of the city of Lansing. I am acquainted with Nelson McClintic. I saw Nelson McClintic on the 24th day of March, last, in my office in the city hall in Lansing, if I remember correctly, around about 10 o'clock, perhaps a little later, and the occasion of his being at my office was, I had been called down there in regard to issuing a warrant for Theodore De Meaux for violation of the local option law. Mr. Eurek and Mr. Hambruck were at my office at the time, and a few minutes later Mr. McClintic was there. If I remember correctly, Mr. Hambruck went out soon after, or about the time McClintic came in. There was a complaint against De Meaux at that time. The complaint was signed by Frank Eurek. Upon that occasion I swore Mr. McClintic as to the matters charged in the complaint. * * * I asked McClintic what there was about the fact of the statement made by Mr. Eurek that he had purchased liquor of De Meaux that night, and he said that Hambruck

gave him two $1 bills and told him that if he would go to De Meaux's and purchase two pints or one quart of whisky he would give him half of it for doing it. He stated that he went to De Meaux's place, bought two one-pint bottles of whisky, and gave him the two $1 bills that Hambruck had given him to purchase the liquor with, to De Meaux, and that he came away with the two one-pint bottles of whisky, that he gave one pint of whisky to Hambruck and kept the other pint himself.

"*Q.* I will ask you if that is the testimony upon which you issued the warrant in this case?

"*A.* Yes, sir."

The record does not disclose any testimony contradicting the above testimony as to the time and manner of the examination on oath of the defendant.

Section 11839, 3 Comp. Laws, being section 15007, 5 How. Stat. (2d Ed.) (3 Comp. Laws 1915, § 15666), provides as follows:

"Whenever complaint shall be made to any such magistrate, that a criminal offense, not cognizable by a justice of the peace, has been committed, he shall examine on oath the complainant, and any witnesses who may be produced by him."

The object of this examination is to determine the existence of ground for the warrant, and need not be reduced to writing. *People* v. *Bechtel*, 80 Mich. 623 (45 N. W. 582) ; and see notes to above section 15007, Howell.

There was evidence upon the trial in support of the above claim of the people.

The defendant testified upon the trial, in substance: That Hambruck came to his room where he was living, about 9 o'clock of the evening of March 24th, and produced and offered to the defendant some whisky. That defendant claimed that he went out with Hambruck upon the street, at his request, and that Hambruck said he needed some more whisky, and that he

had been to De Meaux's place and could not get it, and
he asked the defendant to go and see if he could not
get some from De Meaux, and that Hambruck then
gave him two $1 bills. That defendant took the money
and went to De Meaux's place. That he tried to ob-
tain the whisky. from De Meaux and was refused,
De Meaux stating that he did not sell any whisky,
and that De Meaux did not sell him two one-pint bot-
tles that night, nor any whisky, and that defendant
did not pay him any money that night at all. That
when he came out of De Meaux's place he met Ham-
bruck and walked around with him and gave back to
him the money which Hambruck had furnished him.
That Hambruck then furnished the defendant with a
drink of whisky and said that he had another bottle.
About this time defendant claims that they met the
officer Eurek, and he said, "I want both of you boys."
That the officer took him and Hambruck to the city
hall, where the whisky which Hambruck had furnished
the defendant was taken from him, and also some
whisky was taken from Hambruck; that the officers
expressed great anxiety to arrest De Meaux. The
defendant testified: That at this time the chief of
police came in and abused him, swore at him, called
him a "damned liar," shook his fist in his face, threat-
ening to strike him. That first one would question
him, then another, and this abuse was continued. That
the justice said to him, "What are you here for?"
That he told him because he could not get away; that
they brought him there. Whereupon the justice said,
"You might as well tell us all about it," and com-
menced to laugh, and defendant told him he had noth-
ing to tell, and then he started asking questions, and
the chief and Eurek abused him and called him a liar.
That Eurek took him alone and said:

"You might as well come clean and tell this. You
can be home in 15 minutes and in bed, because it is

not you we want; it is the nigger we have been after."

That the treatment of the police officers and the justice made him nervous. That he was soon after placed under arrest for having furnished liquor to Hambruck, and he was taken to Mason and confined in jail, but was never tried upon the charge of violating the local option law. The defendant testified that he had been drinking some whisky furnished him by Hambruck. He denied that he told them that he got the whisky from De Meaux, and also denied the purchase of any whisky from De Meaux; that they kept this abusive language up for three-quarters of an hour before he was taken to the justice's office. He testified that he had no recollection of going to De Meaux's and coming back with whisky, and claims that he did not remember what he said before the justice.

At the close of the people's case, there was a motion for a directed verdict of not guilty, for the reasons that there was no proof in the case showing that defendant bought the liquor from De Meaux, and that the only proof that defendant swore falsely upon the examination was his own admission, and that such admissions and statements: being extrajudicial, were not sufficient to establish the charge unless supported by other substantive proof, of which there was none. The motion was overruled, and defendant's counsel excepted.

There was other evidence tending to corroborate some portions of the defendant's testimony

The court was requested to charge the jury, among other things, as follows:

"(1) I instruct you in considering the guilt or innocence of the respondent, before you can convict you must find that the people have proved beyond a reasonable doubt in your minds,  *   *   *   that the matters sworn to were false in fact, and that this respondent knew at the time he made these statements under

oath that they were false. In other words, gentlemen, in order to find this respondent guilty as alleged, you must find as a matter of fact that on the 24th day of March last this respondent did go to Theodore De Meaux's place of business on Ionia street in the city of Lansing, and there did purchase from the said Theodore De Meaux two one-half pints of whisky.

"(2) I instruct you that you cannot find this respondent guilty of testifying falsely upon the testimony of one witness whose testimony is given to prove the falsity of this statement so made, for that would only be oath against oath. It is necessary that, in addition to the testimony of one witness to the falsity of the statement alleged to have been perjury, that strong corroborating circumstances of such a character as will clearly turn the scale and overcome the oath of the party charged should be proven.   *   *   *

"(4) Now, gentlemen of the jury, if you find from the evidence that the alleged statement made by this respondent before Charles F. Haight, a justice of the peace, at his office in the city of Lansing, in the evening between the hours of 10 and 12 o'clock p. m., were made under duress, promise, threats, or fear, or excitement, even though they may have been made under oath, they cannot be considered by you as evidence against this respondent. In order for these statements to be used as evidence against this respondent, they must have been made voluntarily and not through coercion or through fear or under excitement, and even then any statement that he may have made at that time, whether under oath or not, can only be considered by you as corroborating evidence of whether or not the testimony given by the respondent on the 7th of April last, upon the preliminary examination before the said Charles F. Haight of Theodore De Meaux, were true or false.

"(5) Gentlemen of the jury, the court instructs you that the respondent in this case is presumed under our law to be innocent of the crime charged until he has been proved guilty beyond any question of reasonable doubt. A 'reasonable doubt' is a doubt which grows out of the testimony in the case. It is not a mere fictitious or an imaginary doubt, but it is a doubt aris-

ing in your minds after you have carefully considered all the testimony in the case. If your mind then is in such condition that you cannot say to a moral certainty that the defendant is guilty, a reasonable doubt exists in your minds and you should acquit him. If you have no such reasonable doubt in your minds under the testimony, then you should convict him. That is what is meant by a reasonable doubt. If, after you have looked this testimony carefully over, you have any reasonable doubt in your minds of this young man's guilt, you should fearlessly say that he is 'not guilty.' "

None of these requests was given by the court. The court did charge the jury upon the subject of the presumption of innocence in the following language:

"In this case, as in all criminal cases, the burden of proof rests on the people, and the man comes into court clothed with the presumption of innocence and he stands innocent in your minds until the people, through the prosecuting attorney, have convinced you of his guilt beyond a reasonable doubt."

The court further charged the jury as follows:

"Now, a 'reasonable doubt' means just what it says, a doubt which a reasonable man might have. It is not a captious doubt. It is not that the matter must be proved as a mathematical problem is proved beyond all peradventure. It simply means that they must prove to you beyond a reasonable doubt that respondent is guilty, before you can so find him.

"In this case, the charge is perjury, false swearing. It might be termed lying in court under oath. Stripped of all its technicalities, the case is this: A certain person in Lansing was apprehended for a violation of the local option law. That is a crime, and when the officers have evidence sufficient they issue a warrant; that is, a justice of the peace or the other properly organized officers would issue a warrant. The man is brought in, or the woman, and the first thing is to give them an examination. Now, in that examination Mr. McClintic was called as a witness, and he was asked if he had bought liquor of this man Theo-

dore De Meaux, and he said, 'No.' And he was asked if he had paid him any money, and he said, 'No.' Well now if that is true, that was very proper testimony for Mr. McClintic to give. But the people claim that as a matter of fact he had actually bought liquor of Theodore De Meaux and had paid him money, and to substantiate their claim they bring forward these people who claim that at certain times and under certain circumstances Mr. McClintic admitted that he had bought this liquor of Mr. DeMeaux and had given him the money. And then they bring forward certain witnesses to testify to certain circumstances which might or might not convince you of the fact.

"Now, gentlemen, the thing for you to determine is this: Did Mr. McClintic, when he testified in that examination that he had not bought liquor of Mr. De Meaux and had not paid him money, did he tell the truth? If he did, you must bring in a verdict of not guilty. But if you believe that he did buy the liquor of Mr. De Meaux, or that he did pay the money to Mr. De Meaux, and if you are convinced of that beyond a reasonable doubt, under all the circumstances that have been given, then your verdict should be guilty.

"Something has been said about his testifying before Justice Haight, and taking an oath there. This question of perjury is not a question of whether he swore falsely before Justice Haight at that time that the warrant was made, but the question of perjury is: Did he swear falsely at the time of the examination?"

The defendant was convicted and sentenced to the State prison. The case is before us upon writ of error, and the assignments of error complain of certain rulings of the court in the introduction of evidence, of the conduct of the trial, of the refusal of the court to charge the jury as requested, and in the charge of the court as above indicated.

1. A careful examination of the record does not disclose any reversible error in the rulings of the court upon matters of evidence during the trial. We think the court did not err in refusing to direct a verdict of not guilty. The case is somewhat peculiar and un-

usual, in that it is the claim of the people that the defendant had made contradictory statements under oath, and that he told the truth when examined before the magistrate before the issuing of the warrant on March 24th, and that he swore falsely and committed perjury upon the examination of De Meaux, held April 7, 1916.

In some of the early English cases it was held that a contradictory statement under oath of a defendant justified a conviction for perjury, and that the jury might infer a corrupt motive from such contradictory statements. One eminent English judge said:

"There is no doubt that what might be called a common-sense conclusion is that if a man deliberately and wilfully on one occasion swore that a fact was so, and on another occasion deliberately swore that it was not so, no doubt he must have been guilty of perjury on one or the other occasion."

We think the better doctrine, as shown by the great weight of authority in this country, is correctly stated in Bishop's New Criminal Procedure, vol. 3, § 931, where that author says:

"Where, on different occasions, the defendant has sworn both in affirmation and denial of the same thing, oath nullifies oath; and the rule that the testimony of one witness will not authorize a conviction does not apply. The further doctrine as to the effect of his contradictory statements, whether made on oath or not, is that in neither case are they alone a sufficient foundation for a conviction for perjury. But the added testimony of an independent witness to the falsity of the one statement is not required where, as often happens, the truth may be otherwise duly evolved from the combined proven facts."

In 2 McClean's Criminal Law, § 891, appears the following statement:

"Proof that accused has given contradictory testimony under oath at a different time will not be suffi-

cient to establish the falsity of the testimony charged as perjury, for this would leave simply one oath of the defendant as against another, and it would not appear that the testimony charged was false rather than the testimony contradictory thereof. The two statements will simply neutralize each other; there must be some corroboration of the contradictory testimony. Such corroboration, however, may be furnished by evidence *aliunde* tending to show the perjury independently of the declarations of testimony of the accused."

We think that it should be held that a conviction for perjury cannot be sustained merely upon the contradictory sworn statements of the defendant, but the prosecution must prove which of the two statements is false, and must show that statement to be false by other evidence than the contradictory statement. *Billingsley* v. *State*, 49 Tex. Cr. R. 620 (95 S. W. 520). This case will be found reported in 13 Am. & Eng. Ann. Cas. at page 730, and there is a very full and complete note containing reference to the authorities, both English and American. Many cases are cited, among them *Schwartz* v. *Commonwealth*, 27 Grat. (Va.) 1025, 21 Am. Rep. 365; *Rhodes* v. *Commonwealth*, 78 Va. 692.

It seems to us that the trial court should have covered this question with a more explicit charge. The attention of the jury should have been directed to the point whether perjury was committed by the defendant, if at all, on the 7th of April when he testified upon the examination, or whether he had testified mistakenly or untruthfully or falsely on March 24th before the magistrate. We have no doubt that under our statute deliberate and wilful false swearing before the magistrate upon a material matter, before the warrant was issued, and after the complaint had been made, would constitute perjury. We do not hold that the defendant might not have been properly convicted of

perjury in his testimony of the 7th of April, if the jury should find, under proper instructions, that he had testified to the truth before the magistrate on the 24th of March. But to reach that result the evidence should have negatived the probability of mistake or duress in regard to the first statement, and the people should have shown which of the two statements was false; or rather, under this information, they should have shown that the last statement was false.

We think that under the testimony of the defendant his claim that his statements made before the magistrate, and other statements in the presence of the other witnesses were not freely made, or that they were induced by threats, duress, and the exercise of what is claimed by the defendant as the "third degree," and were not true in fact, should have been submitted to the jury; and we also think that it was prejudicial error not to have given defendant's first and second requests to charge, or the substance thereof.

As to the claimed admissions or confessions of the defendant, we have recently stated the rule to be that, if the preliminary testimony made it clear either that the statement claimed to have been made was voluntary or involuntary, it is the duty of the trial court to admit or reject it. If the testimony left the question in doubt, it was the duty of the court to admit it, and leave the question to the jury under proper instructions to determine whether it was voluntarily made. *People* v. *Prestidge,* 182 Mich. 80, 82 (148 N. W. 347). We think that the jury should have been explicitly instructed upon this subject, but the subject was not alluded to in the charge.

2. Was the charge upon the subject of the presumption of innocence sufficient, in view of the refusal to charge as requested on that subject?

We have held that it was not error to refuse specific requests, if the charge as given brings out the same

point clearly and definitely. *People* v. *Hoek,* 169 Mich. 87 (134 N. W. 1031). But upon this subject see the following cases: *People* v. *Karamol,* 173 Mich. 354 (139 N. W. 1); *People* v. *Rogulski,* 181 Mich. 481 (148 N. W. 189); *People* v. *De Fore,* 64 Mich. 693 (31 N. W. 585, 8 Am. St. Rep. 863). In the last-cited case it was said:

"It is the duty of the trial judge, in a criminal case, to instruct the jury in reference to the presumptions of law applicable to the case before them, distinguishing those' which are conclusive from those which are disputable. The presumption of innocence is present in every criminal case; and he should instruct the jury to that effect, and that it stands good until overcome by evidence which convinces the jury beyond a reasonable doubt that the respondent is guilty."

In our opinion the language used by the trial court was not a correct statement of the law. In view of the request to charge, it was not sufficient to say "the man comes into court clothed with the presumption of innocence, and he stands innocent in your minds until the people, through the prosecuting attorney, have convinced you of his guilt beyond a reasonable doubt." It was not the equivalent of stating that the presumption stands good until overcome by *evidence* which convinces the jury beyond a reasonable doubt that the defendant is guilty.

In the particulars above pointed out, we are of the opinion that the trial court erred in its charge to the prejudice of the defendant. The case was one requiring more explicit instructions as to the law governing the crime of perjury, under the exceptional circumstances of the case.

The judgment of the court below is reversed, and a new trial granted.

KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.