PEOPLE *v.* MILLER.

1. CRIMINAL LAW—PERJURY—ARGUMENT OF PROSECUTOR.
   In prosecution for perjury based on testimony alleged to have
   been given by defendant in one-man grand jury investigation,
   argument of prosecuting attorney that said prosecution was
   with approval, authority, and consent of circuit judge who
   conducted investigation, *held,* prejudicial error, where there is
   nothing in record to show that judge took said action.

2. SAME—TRIAL—INSTRUCTION.
   Where, in said prosecution, there was no bill of particulars
   defining what people claimed, argument of prosecuting attor-
   ney together with charge of court permitting conviction on
   anything contained in defendant's grand jury testimony,
   whether charged against him or not, *held,* prejudicial error.

3. PERJURY—EVIDENCE—CONTRADICTORY STATEMENTS.
   In prosecution for perjury based on testimony alleged to have
   been given by defendant in one-man grand jury investiga-
   tion, proof of statements made by him out of court at vari-
   ance with his testimony before grand jury, while admissible,
   *held,* insufficient to sustain conviction, where not corroborated
   by substantive evidence of guilt.

Appeal from Ingham; Collingwood (Charles B.),
J. Submitted November 1, 1932. (Docket No. 218,
Calendar No. 36,532.) Decided February 10, 1933.

Peter A. Miller was convicted of perjury. Re-
versed, and new trial granted.

*Pierce & Planck* and *James K. Nichols* (*Seth Q.
Pulver* and *George E. Nichols,* of counsel), for ap-
pellant.

As to conviction of perjury upon proof that accused made contra-
dictory statements, see annotation in L. R. A. 1917C, 58.

*Paul W. Voorhies,* Attorney General, and *John Wendell Bird,* Prosecuting Attorney, for the people.

POTTER, J.  The Federal Bond & Mortgage Company, Inc., a corporation, was engaged in business in Detroit.  It became involved in financial difficulties.  On petition of the prosecuting attorney of Ingham county, a so-called one-man grand jury was ordered to conduct an investigation in regard to the activities of the Federal Bond & Mortgage Company, Inc., and Allied Properties Corporation,·their officers, directors, and agents, during the past several years, within the said county of Ingham, and all circumstances directly or indirectly related thereto. Defendant was called, sworn, and testified as a witness before the one-man grand jury, called in pursuance of this order, and subsequently was arrested and informed against for perjury, convicted on trial, and appeals, claiming the information filed against him should have been quashed, the court should have required the prosecuting attorney to furnish a bill of particulars, a change of venue should have been granted; that the court excluded competent, relevant, and material testimony; the prosecuting attorney's argument to the jury was prejudicial; the court erred in his charge to the jury; verdict should have been directed for defendant; and after conviction he should have been granted a new trial.  The testimony of defendant before the one-man grand jury occupies more than 150 pages of the printed record and covers many subjects.  The information filed charged:

"The said Peter A. Miller did then and there wilfully swear falsely in regard to certain material matters respecting which said oath was authorized

and required, he, the said Peter A. Miller well knowing said testimony to be false and untrue, the said material facts to which he testified falsely being in substance as follows:   that he, the said Peter A. Miller, did not receive the sum of $7,500 as a consideration from the Federal Bond & Mortgage Company, Inc., nor from any of its officers or agents, it being then and there material in said. inquiry whether in truth and in fact he, the said Peter A. Miller did receive the said sum of $7,500 from the Federal Bond & Mortgage Company, Inc., or from any of its officers or agents, and by reason of the premises aforesaid, the said Peter A. Miller did then and there commit perjury during the said investigation.''

It is not claimed by the people defendant was ever a stockholder in the Federal Bond & Mortgage Company, Inc., an officer therein, or an employee thereof. The one-man grand jury proceeding was conducted by circuit judge Carr, who, upon its conclusion, filed a written report criticizing the actions of the Federal Bond & Mortgage Company, Inc., in the issuance and sale of bonds secured by mortgage upon real estate, whose value was inflated by appraisal; the issuance and sale of bonds not approved by the securities commission, the lack of a law providing for the formation and supervision by State authority of bondholders' committees, and the sale by an employee of the Federal Bond & Mortgage Company, Inc., of unapproved securities in Ingham county—

''Aside from these instances it does not appear that there has been, within the limits of Ingham county, any violation of the laws of this State in connection with the issuance and sale of the securities in question.''

The prosecuting attorney, in his closing argument to the jury, said:

"As long as the matter has been raised in that particular form, I think I have this to say about this investigation. I think I have this right to ask this jury to infer between the lines in this entire matter and I am going to ask you members of the jury now if there is a single one on this panel irrespective of what may be the argument of this prosecution, so far as the guilt or innocence of Peter Miller, the respondent, is concerned, if there is a single individual juror on this panel who thinks the prosecution, prosecution of perjury in connection with the secret investigation called this summer on the order of Judge Leland W. Carr, of this circuit, I ask again if there is a single member on this panel who thinks this prosecution for perjury was started without the approval and authority and recommendation and consent of the circuit judge who conducted this investigation?"

The argument of the prosecuting attorney was more than a commendable flight of fancy. It was not based upon the record. There was nothing to indicate Judge Carr ordered, directed, instructed, or approved the prosecution of defendant. Nothing to show he took any action in relation to the one-man grand jury proceedings, except those indicated by his findings. The argument of the prosecuting attorney was erroneous and prejudicial to defendant.

Upon his arraignment upon the information filed against him, defendant made a motion to quash and a demand for a bill of particulars, which motion and demand were denied by the trial court. The case was tried, and the testimony of defendant given on the grand jury investigation was read by the

stenographer who had taken the testimony in such one-man grand jury proceedings. In his closing argument, the prosecuting attorney said:

"The charge of perjury in this case is based upon the entire record of this witness' testimony. So we get down to this. This is the determining factor in this case and there isn't any question but what a careful reading of this transcript, a careful remembering what Rudolph Loomis put into the record when reading his personal notes will show that all the way through from or for or anything else notwithstanding, this respondent, Miller, in his grand-jury investigation testimony said 'I got that $7,500 as payment for services as attorney from the Frankels and that I did not get it from the Federal Bond & Mortgage Company nor from any of its officers or any of its agents, that was for killing my committee or for ceasing my activities against the organization or officers of that company.' You have got the two things right there analyzed. If he got this money as the record shows, that is, if the record shows he got the money as services for attorney for the Frankels, we will put it that way for the defense, if the record shows the testimony given at that investigation was he was getting this $7,500 for ceasing his activities against the Federal Bond & Mortgage Company, and calling off his committee, then I say that is the thing he is charged with. It is on the basis of that the prosecution is asking a verdict in this case, so what we want to do in just two or three minutes, if we can, is to see if he got that money as services as attorney for the Frankels or whether he got that money out of a black-mail scheme for killing his committee and that sort of thing."

Apparently from his closing argument to the jury the prosecuting. attorney was claiming Miller was

guilty of perjury when he testified he got $7,500 as payment for services as attorney for the Frankels, when as a matter of fact he got it from the Federal Bond & Mortgage Company, Inc.; was guilty of perjury in testifying he did not receive the $7,500 for the purpose of ceasing his activities against the Federal Bond & Mortgage Company, Inc.; and in indicating he got the $7,500 as services as attorney for the Frankels. When the case was submitted to the jury by the trial court he charged:

"It is the theory of the prosecution that when Peter A. Miller was giving testimony before a grand-jury proceeding in this county he made the statements which have been given you in evidence. * * * The question for you to determine is this, did Peter A. Miller wilfully swear falsely in regard to a matter respecting which such oath is authorized?"

There being no bill of particulars defining what the people claimed, the prosecuting attorney arguing the matter in his closing argument to the jury as was done in this case, and the circuit judge submitting the entire record of the testimony of defendant in the grand-jury investigation, to the jury, left the case to the jury with instructions permitting them to convict defendant on anything contained in the grand-jury testimony of defendant, whether charged against him or not. We think the argument and submission of the case to the jury, when considered together, erroneous.

If there is any charge made against defendant upon which he was tried, it must, we think, be based on that part of his grand-jury testimony where he testified:

"*Q.* Well, did you ever before that * * * I am talking of at any time, did you have any business relations or business deal with any of the officers?

"*A.* No, sir.

"*Q.* Except in connection with the interest due on your bonds?

"*A.* That is right.

"*Q.* Did you ever represent any officers of the company as an attorney?

"*A.* No, sir.

"*Q.* Did you ever receive any money from any of them excepting for interest?

"*A.* Well, I received a check for $2,500 and later one for $5,000 in consideration of services as attorney, as partial payment for services as attorney from the Frankels but not from the Federal Bond & Mortgage Company.

"*Q.* Well, the Frankels at that time were directors and practically owners of the Federal Bond & Mortgage Company, they owned about 75 per cent. of the stock at that time?

"*A.* If they did I did not know it. They told me they were in control.

"*Q.* With reference to that, you were retained by the Frankels to represent them, I assume, for the reorganization of the company, were you?

"*A.* Well, the reorganization of the company and in connection with the reorganization of various properties.

"*Q.* Well, you had some conversation in that regard with the officers of the Federal Bond & Mortgage Company, didn't you?

"*A.* No, sir. The Frankels were not officers of the Federal Bond & Mortgage Company.

"*Q.* Who delivered to you the $2,500?

"*A.* Judge Murphy."

Defendant admits he received a check for $2,500 from Judge Murphy, who was then president of the

Federal Bond & Mortgage Company, Inc., and later one for $5,000. It was defendant's claim he received this money in payment for services as attorney for the Frankels; that the Frankels were at that time in control of the Federal Bond & Mortgage Company, Inc.; that he received the money as retainer and for services in the reorganization of the Federal Bond & Mortgage Company, Inc., and in connection with the reorganization of various properties. There was no substantive testimony this money was paid to defendant for the purpose of stifling an investigation or for ceasing defendant's activities against the Federal Bond & Mortgage Company, Inc., or calling off his bondholders' committee, except proof of statements which defendant is alleged to have made out of court. Proof of these statements was admissible, but defendant may not be convicted of perjury upon proof he made statements out of court at variance with his testimony before the grand jury. *People* v. *McClintic*, 193 Mich. 589 (L. R. A. 1917 C, 52); *People* v. *Kennedy*, 221 Mich. 1; *Clayton* v. *United States* (C. C. A.), 284 Fed. 537. The other assignments of error are not considered.

Conviction reversed, new trial ordered.

McDONALD, C. J., and CLARK, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.