PEOPLE v CASH

1. GRAND JURY—WITNESSES—TESTIMONY—EXAMINATION BY DEFEND-
ANT.

Availability of a transcript of testimony given by a witness before
a one-man grand jury, in defendant's trial for perjury before
the grand jury, is controlled by *People v Bellanca,* 386 Mich
708 (1972).

2. GRAND JURY—WITNESSES—INVESTIGATOR.

Assertion that an investigator for a one-man grand jury may not
testify before the one-man grand jury is without merit, where
the trial judge found, after a hearing on a separate record, that
the investigator in question was not an employee of the grand
jury, and where the finding was not clearly erroneous.

3. PERJURY—INDICTMENT AND INFORMATION.

Materiality of the false swearing to the matter in question must
be alleged in an information charging perjury or it must
clearly appear so from the statements alleged to be false.

4. PERJURY—INDICTMENT AND INFORMATION—CRIMINAL LAW—GRAND
JURY.

A count of an information charging perjury, which stated that
defendant falsely swore before a grand jury in that he an-
swered "no" to the question whether any money was set aside
for him by the numbers men whereas he told a witness that
there was some money set aside for him by the numbers men,
is defective in that whether defendant ever told anyone any
money was set aside for him by the numbers men is not alleged
to be material to the issue before the grand jury, *i.e.,* whether
certain crimes, offenses or misdemeanors have been committed

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 38 Am Jur 2d, Grand Jury §§ 37, 38.
[3–6] 60 Am Jur 2d, Perjury §§ 28–45.
[7] 60 Am Jur 2d, Perjury §§ 58, 59.
[8, 9] 60 Am Jur 2d, Perjury § 63.
Corroboration by circumstantial evidence of testimony of single
witness in prosecution for perjury, 111 ALR 825.

nor does its materiality appear from the statement alleged to be false (MCLA 750.422).

5. PERJURY—INDICTMENT AND INFORMATION—CRIMINAL LAW—GRAND JURY.

   A count of an information charging perjury, alleging that defendant falsely swore before a grand jury that a state trooper never brought a prostitute before him yet he had been with that trooper with prostitutes whereas defendant had never been with that trooper with prostitutes, was defective in not alleging that defendant's statement was material because the crimes, offenses and misdemeanors the grand jury was to investigate did not include assorted sex offenses by a state trooper or anyone else and its materiality does not appear from the statement.

6. PERJURY—INDICTMENT AND INFORMATION—GRAND JURY.

   An information was sufficient to charge perjury, which stated that defendant falsely swore in that he answered "no, sir" to a question asked him by a grand juror as to whether he gave money to a certain person after that person had exercised his discretion, or judgment, on any matter that came to him as a township officer whereas in truth and in fact defendant paid that person $180 on each of two separate occasions, where, whether or not defendant paid that person money for the exercise of his discretion as a co-ordinator of a township police and fire department, was manifestly material to the issue in question before the grand jury and the truth or falsity of defendant's statement of denial would indeed be material to his guilt of perjury.

7. PERJURY—EVIDENCE—TRAFFIC BOOK—ADMISSIBILITY.

   Admission in evidence of a "traffic book", a log of traffic tickets issued by a police department which was maintained as a regular practice, was not clearly erroneous in a trial for perjury where one issue was whether defendant had paid a township traffic co-ordinator 50 cents per traffic violation for increasing the number of tickets issued, and a witness had testified that the amount of the payoff was checked against the traffic book.

8. PERJURY—EVIDENCE—CORROBORATION.

   The prosecution must prove the falsity of the statement made by the defendant by establishing the truth of its contradiction to sustain a conviction of perjury; it is not enough simply to contradict it, but evidence of the truth of the contradiction

must come from evidence of circumstances bringing strong corroboration of the contradiction.

9. PERJURY—EVIDENCE—CORROBORATION—CORPUS DELICTI.

A "traffic book" showing an increase in the number of traffic tickets issued by township police was not adequate to corroborate a witness's testimony that he was paid by defendant for causing an increase in the number of tickets issued, as alleged in an information charging perjury by the denial that defendant had paid the witness, where there was no other evidence in the record to corroborate the witness's charge and the increase in the volume of traffic tickets shown by the traffic book is ambivalent and standing alone cannot establish the *corpus delicti;* accordingly defendant's conviction of perjury must be reversed.

Appeal from Court of Appeals, Division 2, R. B. Burns, P. J., and Holbrook and V. J. Brennan, JJ., affirming Oakland, James S. Thornburn, J. Submitted March 7, 1972. (No. 2 March Term 1972, Docket No. 53,237.) Decided August 30, 1972. Rehearing denied October 31, 1972.

28 Mich App 1 reversed.

Lonnie C. Cash was convicted of perjury. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed and defendant discharged.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas G. Plunkett,* Prosecuting Attorney, and *Dennis Donohue,* Chief Appellate Counsel, for the people.

*Hyman & Rice* (by *Robert Friedman, Stanley M. Weingarden,* and *Hanley M. Gurwin),* for defendant.

T. G. KAVANAGH, J. Defendant was convicted of perjury in connection with an Oakland County "one man" grand jury. He was charged on five

counts, count I of which was dismissed on motion during the course of the trial, and the jury found him not guilty on count III, but guilty on counts II, IV, and V. The Court of Appeals affirmed his convictions.

The counts in the information upon which defendant was convicted read as follows:

### "COUNT II—PERJURY

"On or about the fifth day of April, A.D. 1966, LONNIE C. CASH, upon his oath before the Honorable Philip Pratt, conducting the Judicial Inquiry ordered in the above cause, did feloniously, wilfully, corruptly and falsely swear, in that he answered, 'No' to the following question asked him: 'So you have never told anyone that there was any money set aside for you by the numbers men?', whereas in truth and in fact the said LONNIE C. CASH, on or about the seventh day of May, 1965, did tell one Thomas Bowles, in the presence of one Aaron Butler, that there was some money set aside for him by the numbers men, said statement being made at the William Beaumont Hospital located in the City of Royal Oak, Oakland County, Michigan, Contrary to Section 750.422 of the Compiled Laws of 1948: (M.S.A. Section 28.664). *(Maximum penalty—15 years).*

### "COUNT IV—PERJURY

"On or about the fifth day of April, A.D. 1966, LONNIE C. CASH, upon his oath, before the Honorable Philip Pratt, conducting the Judicial Inquiry ordered in the above cause, did feloniously, wilfully, corruptly and falsely swear, in that he answered, 'No, sir', to the following question asked him by the Honorable Philip Pratt: 'Have you ever given him (Ernest Wilson) any money after he had exercised his discretion, or judgment, on any matter that came to him as a Township Officer?', whereas, in truth and in fact, the said LONNIE C. CASH paid Ernest Wilson the sum of approximately $180 on each of two separate occasions; said money being paid to Ernest Wilson under an agreement, whereby he, as the Co-ordinator of the Royal Oak Township Police and Fire Departments, was to initiate

a program designed to increase the number of traffic tickets issued, and in return for this effect increase, he (Wilson) was to receive fifty cents per ticket from LONNIE C. CASH, Contrary to Section 750.422 of the Compiled Laws 1948: (M.S.A. Section 28.664) *(Maximum penalty—15 years).*

*"COUNT V—PERJURY*

"On or about the fifteenth day of July, A.D. 1965, LONNIE C. CASH, upon his oath, before the Honorable Philip Pratt, conducting the Judicial Inquiry ordered in the above cause, did feloniously, wilfully, corruptly and falsely swear, in that he stated, 'Trooper Aird has never brought before me a single prostitute, yet I have been in the car with him while prostitutes were present therein at late hours of the night. I speak with special reference to Roselyn Capers. He played with her intimately and said that he would get her one day. He never did', whereas, in truth and in fact the said LONNIE C. CASH was never in a State Police car with the said Roselyn Capers and Trooper John Aird, nor with Trooper John Aird and any other female person, Contrary to Section 750.422 of the Compiled Laws of 1948: (M.S.A. Section 28.664). *(Maximum penalty—15 years)."*

This appeal makes four assertions of error:

1. The perjury information should have been dismissed because the information was fatally defective for failure to allege the purported false swearing was material to the inquiry.

2. It was reversible error to deny defendant's counsel an opportunity to examine the grand jury testimony of Thomas Bowles.

3. An investigator for the grand jury may not testify before it.

4. There was inadequate corroboration of the testimony contradicting defendant's testimony.

Our decision on the second assertion of error regarding the availability of the transcript of the

grand jury testimony is controlled by *People v Bellanca,* 386 Mich 708 (1972).

We find no merit in the third assertion of error.

The trial judge, on a separate record, heard testimony and argument that Trooper Aird was employed by the grand juror. No evidence was adduced that Trooper Aird was paid by the grand juror, Oakland County or anyone other than the State Police. From all of the evidence before him the trial court concluded that Trooper Aird was not an employee of the grand jury. We are not persuaded this conclusion was clearly erroneous.

We are persuaded that the first and fourth assertion of error do have merit, however, and require reversal of defendant's conviction.

Regarding the issue of whether there must be an averment of materiality of the allegedly false swearing, we are satisfied the Court of Appeals incorrectly stated the law.

That Court held that *People v Kaplan,* 256 Mich 36 (1931), apparently abandoned Michigan's long standing requirement that materiality of the false swearing to the matter in question must be alleged or it must clearly appear so from the statements alleged to be false. See *People v Collier,* 1 Mich 137 (1848); *Hoch v People,* 3 Mich 552 (1855); and *People v Vogt,* 156 Mich 594 (1909).

In *People v Kaplan, supra,* the indictment charged:

" 'The said Jacob Kaplan * * * knowingly, falsely, wilfully, maliciously, corruptly, and feloniously did so depose and swear, well knowing that said testimony was false and * * * that the matters so sworn to before said grand jury were material matters.' "

The Court in that case approved an amendment to the indictment to charge specifically that the

perjured testimony was false and material, although it held that the indictment as first framed was sufficient.

Thus *Kaplan* did not change the rule enunciated in *Collier, supra.* The language approving the statutory form of indictment was dicta which in our view no fair reading would stretch to cover the point asserted by the Court of Appeals. We hold that the *Collier* rule is still an accurate statement of the law in Michigan, *viz,* materiality of the false swearing to the matter in question must be alleged or it must clearly appear so from the statements alleged to be false.

We test each count against this standard.

*Count II.*

The people established that defendant visited Thomas Bowles in a hospital and had a conversation with him which was recorded. Part of the recording allegedly showed that the defendant said in essence:

"I know the bag men in town, I know where the money goes. These people know that I know that, and they know deep in their heart that I am not involved. There's a little sack for me, but I don't get it, and I don't intend to."

In his grand jury testimony the following question was posed to defendant:

"So you have never told anyone that there was any money set aside for you by the numbers men?"

and he answered: "No".

Whether defendant ever told anyone that any money was set aside for him by the numbers men is not alleged to be material to the issue in question, to wit—whether certain crimes, offenses or

misdemeanors have been committed. Neither does it appear so from the statement alleged to be false: "I never told anyone there was any money set aside for me by the numbers men."

The motion to quash should have been granted as to Count II.

*Count V.*

This count was based on defendant's statement to the grand juror:

> "Trooper Aird has never brought before me a single prostitute, yet I have been in the car with him while prostitutes were present therein at late hours of the night. I speak with special reference to Roselyn Capers. He played with her intimately and said that he would get her one day. He never did."

At defendant's trial both Trooper Aird and Roselyn Capers denied the accusation.

The crimes, offenses and misdemeanors the judicial inquiry was to investigate did not include asserted sex offenses by Trooper Aird or anyone else. The defendant's statement that he was in the car with Trooper Aird at late hours of the night when prostitutes were present in the car and that on one occasion the Trooper played intimately with prostitute Roselyn Capers and said that he would get her one day—is not alleged to be material to the issue in question nor does it appear to us to be so.

The motion to quash should have been granted as to Count V.

*Count IV.*

With respect to Count IV, however, we are satisfied that under the rule of *Collier* there is a sufficient charging.

Whether or not defendant paid Ernest Wilson money for the exercise of his discretion as the Co-

ordinator of the Royal Oak Township Police and Fire Departments was manifestly material to the issue in question. The truth or falsity of defendant's statement of denial would indeed be material to his guilt of perjury.

The motion to quash Count IV was properly denied.

The fourth assertion of error really states two problems: 1) the admissibility of the "traffic book" and 2) the sufficiency of the evidence including the "traffic book" to corroborate the testimony of Ernest Wilson.

Count IV was based upon defendant's testimony regarding payments to one Ernest Wilson, Township Traffic Co-ordinator.

The grand juror asked the defendant (according to the information):

"Have you ever given him (Ernest Wilson) any money after he had exercised his discretion, or judgment, on any matter that came to him as a Township Officer?"

Defendant answered "[n]o, sir."

Ernest Wilson subsequently testified that defendant agreed to pay him fifty cents per violation if the traffic tickets in Royal Oak Township were increased. He also testified that defendant made several payments to him of approximately $180 each in connection with traffic tickets.

Over defendant's objection, a "traffic book" which was kept under Wilson's order, which indicated some of the traffic tickets issued in Royal Oak Township during a certain time, was admitted into evidence.

This "traffic book" was a log of traffic tickets issued by the police department. It was the practice of the department to maintain this log at the time Mr. Wilson came into the department and it

continued while he was Co-ordinator. Entries were made by the officer issuing the ticket, the officer on the desk, or a clerk. Ernest Wilson testified that the defendant made payoffs to him at the rate of fifty cents per ticket and that the amount of the payoff was checked against the traffic book. It does not appear to us that it was clearly erroneous to admit the traffic book.

But though we find the traffic book admissible, we are compelled to agree with defendant that it is not adequate to corroborate Ernest Wilson's testimony that he paid the defendant as alleged.

Conceding the people's assertion that it reflects an increase in the number of tickets issued during the alleged payoff period, such fact does not tend to establish the bribe.

The law is well established that to sustain a conviction for perjury the prosecution must prove the falsity of the statement made by the defendant. This is done by establishing the truth of its contradiction. It is not enough simply to contradict it, but evidence of the truth of the contradiction must come from evidence of circumstances bringing strong corroboration of the contradiction. *People v Kennedy,* 221 Mich 1 (1922); *People v McClintic,* 193 Mich 589 (1916).

The increase in the volume of traffic tickets shown by the traffic book is ambivalent and standing alone cannot establish the *corpus delicti.*

"This testimony has its rightful place in the case, but it is as capable of being harmonized with the theory of innocence as with that of guilt. It has no direct bearing on the *corpus delicti* and is not of that force and character that the law requires of corroborating circumstances in perjury cases." *People v Kennedy, supra,* at p 4.

There is no other evidence in the record to corroborate Wilson's charge and accordingly the conviction must be reversed.

Defendant discharged.

T. M. Kavanagh C. J., and Adams, T. E. Brennan, and Swainson, JJ., concurred with T. G. Kavanagh, J.

Williams, J., concurred in the result.

Black, J., did not sit in the case.