PEOPLE v LEWANDOWSKI

Docket No. 78-2198. Submitted May 14, 1980, at Marquette.—Decided December 15, 1980.

Michael Lewandowski was convicted of two counts of perjury in the Berrien Circuit Court, Zoe S. Burkholz, J. Defendant appeals, alleging insufficiency of evidence and denial of a speedy trial. *Held:*

1. The prosecution must prove the falsity of the statement made by the defendant by establishing the truth of its contradiction to sustain a conviction for perjury. It is not enough simply to contradict it, but evidence of the truth of the contradiction must come from evidence of circumstances bringing strong corroboration of the contradiction. The evidence was sufficient as to one count, but insufficient as to the other.

2. The court, in deciding whether a delay between indictment and trial has denied a defendant his constitutional right to a speedy trial, must weigh four factors: 1) the length of the delay; 2) the reason for the delay; 3) defendant's assertion of his right; and 4) prejudice to defendant. Delay in prosecution of a defendant may be charged to the defendant where he was also charged with another offense and the prosecutor elected to try him first on the other charge. Defendant was not denied his right to a speedy trial.

Affirmed on one count, reversed on the other and remanded for resentencing.

1. PERJURY — EVIDENCE — CORROBORATION.

The prosecution must prove the falsity of the statement made by the defendant by establishing the truth of its contradiction to sustain a conviction for perjury; it is not enough simply to contradict it, but evidence of the truth of the contradiction must come from evidence of circumstances bringing strong corroboration of the contradiction.

REFERENCES FOR POINTS IN HEADNOTES

[1] 60 Am Jur 2d, Perjury §§ 58-64.
[2] 60 Am Jur 2d, Perjury § 63.
[3] 21 Am Jur 2d, Criminal Law § 241 *et seq.*
[4] 21 Am Jur 2d, Criminal Law § 251.

2. Perjury — Evidence — Theft — Corroboration.
   The testimony of each of two witnesses that he saw the defendant steal something from Montgomery Ward was sufficient to establish strong corroboration of the truth, directly contradicting defendant's testimony that he did not remove things from Montgomery Ward and is sufficient to sustain a conviction for perjury.

3. Criminal Law — Constitutional law — Speedy Trial.
   A court, in deciding whether a delay between indictment and trial has denied a defendant his constitutional right to a speedy trial, must weigh four factors: 1) the length of the delay; 2) the reason for the delay; 3) defendant's assertion of his right; and 4) prejudice to defendant.

4. Criminal Law — Constitutional Law — Speedy Trial.
   Delay in prosecution of a defendant may be charged to the defendant where he was also charged with another offense and the prosecutor elected to try him first on the other charge.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John Smietanke,* Prosecuting Attorney, and *Angela Baryames,* Assistant Prosecuting Attorney, for the people.

*James K. Jesse,* for defendant on appeal.

Before: MacKenzie, P.J., and Bronson and Allen, JJ.

MacKenzie, P.J. On March 10, 1978, defendant, a former police officer for the city of Niles, was convicted of two counts of perjury, contrary to MCL 750.422; MSA 28.664. Defendant was sentenced to five years probation, the first six months to be served in the county jail, and appeals as of right.

Defendant initially argues that there was insufficient corroborative evidence presented at defendant's trial to sustain either of his perjury convictions. In support of this proposition, defendant

cites *People v Cash,* 388 Mich 153, 162; 200 NW2d 83 (1972), where it was held,

"The law is well established that to sustain a conviction for perjury the prosecution must prove the falsity of the statement made by the defendant. This is done by establishing the truth of its contradiction. It is not enough simply to contradict it, but evidence of the truth of the contradiction must come from evidence of circumstances bringing strong corroboration of the contradiction. *People v Kennedy,* 221 Mich 1 (1922); *People v McClintic,* 193 Mich 589 (1916)."

In *Cash,* the Court held that evidence of a traffic log book showing an increased number of traffic tickets was insufficient to corroborate a witness's testimony that he had paid defendant a kickback on each ticket issued in exchange for defendant's bribing him on two occasions. In *Kennedy,* the Court stated that "[s]uch other evidence may consist of corroborating circumstances, but the corroboration must be of a 'strong character and not merely corroborative in slight particulars, and it must contradict in positive terms the statement of the accused.' 21 R.C.L. p. 272." 221 Mich 1, 4.

We recognize that our holding, as well as the *Cash* opinion, could be construed as in conflict with the Michigan Supreme Court's prior decision in *People v Taylor,* 386 Mich 204; 191 NW2d 310 (1971). In rejecting defendant's argument in *Taylor* that by his subsequent qualification his negative answer became affirmative, the Court noted that defendant had in effect denied that he had any personal knowledge of any bribes to township officials. Continuing, the Court stated that:

"As opposed to this denial, one witness testified that he, a township official, had been bribed by the defendant. This testimony, apparently believed by the jury, is

sufficient to sustain the conviction on the third count of perjury." 386 Mich 204, 208.

In *Taylor,* therefore, the issue of corroboration was not directly raised as it was in *Cash;* moreover, in *Taylor,* allusion was made to certain corroborating evidence—tape recordings of conversations— though it is not clear that the recordings directly contradicted the alleged perjurious statements. See this Court's opinion, *People v Taylor,* 18 Mich App 381; 171 NW2d 219 (1969), *aff'd* 386 Mich 204; 191 NW2d 310 (1971). For the additional reason that *Taylor* preceded *Cash,* we hold that strongly corroborative evidence which directly contradicts the alleged perjured testimony is still required.

Defendant was convicted of two counts of perjury for giving false testimony on two material matters before a Berrien County citizens' grand jury. Under Count I of the information, the perjured testimony was quoted as follows:

"*Q.* Have you ever had occasion to remove anything from Wards?
"*A.* No.
"*Q.* You did not?
"*A.* No, sir?
"*Q.* Montgomery Wards in the City of Niles?
"*A.* No, sir."

The people presented the testimony of two witnesses to establish the falsity of defendant's statement. Myron Olson testified under a grant of immunity that he and defendant had formerly worked the midnight shift as Niles city police officers and that sometime in 1973 he and defendant unlawfully entered a Montgomery Ward store and took things. Olson testified that they had broken in several times while on duty. Olson

testified that he could not recall exactly what was taken but thought that defendant had taken some underwear and a pair of shoes. Gilbert Brazo, also a former police officer testifying under a grant of immunity, stated that he and defendant each took a blue denim jacket with a fur collar from Montgomery Ward.

It is true that the two prosecution witnesses testified to different incidents involving the theft of different items. Nonetheless, we are satisfied that the testimony of each witness that he saw defendant steal things from Montgomery Ward was sufficient to establish strong corroboration of the truth, directly contradicting defendant's testimony that he did not remove things from Montgomery Ward.

Count II charged defendant with falsely testifying before the grand jury as follows:

"*Q.* Did you ever have occasion to take anything from Area Lumber?

"*A.* No, sir.

"*Q.* Never did?

"*A.* No, sir.

"*Q.* Never did go into Area Lumber and remove anything from the premises?

"*A.* No, sir.

\* \* \*

"*Q.* Do you have a garage door opener.

"*A.* Yes, sir, I do.

"*Q.* What kind of a garage door opener is it?

"*A.* It is a—I know the last word is Matic.

"*Q.* Is it a Souix? *[sic]*

"*A.* I really don't know.

"*Q.* S-o-u-i-x? *[sic]*

"*A.* I really don't know, sir.

"*Q.* Where did you get that?

"*A.* I bought it.

"*Q.* Where?

"*A.* From Myron Olson.

"*Q.* You got it from Myron Olson?

"*A.* Yes.

"*Q.* How did he get it?

"*A.* I have no idea.

"*Q.* When did you buy it from him?

"*A.* When?

"*Q.* Yes.

"*A.* I think I lived in the house approximately six—so it has been over two years.

"*Q.* Two years ago?

"*A.* (Witness nodding).

"*Q.* How much did you pay for it?

"*A.* I paid him $75.

"*Q.* $75 for the garage door opener?

"*A.* Yes."

Myron Olson testified that defendant took a Moore-O-Matic Sioux garage door opener from Area Lumber, after he and defendant had broken into the store. In addition, the people introduced into evidence a Sioux garage door opener seized from defendant's house pursuant to a search warrant. Gysbert Kallewaurd, the owner of the Area Lumber store in Niles, testified that his store had carried that type of garage door opener, but could not say with certainty that any had been stolen from the store.

We hold that there was insufficient corroborative evidence of Olson's testimony to sustain defendant's perjury conviction on Count II under *People v Cash, supra.* Like the traffic book in *Cash,* defendant's mere possession of the garage door opener was insufficient to corroborate Olson's testimony. Defendant admitted that he owned a Sioux garage door opener, so evidence of his possession of it did

not contradict his testimony. Thus, defendant's conviction on Count II must be reversed.

Defendant's next argument, that the trial court erred in failing to suppress the evidence of the garage door opener, need not be addressed in light of our reversal of his conviction on Count II.

Defendant also argues that the prosecutor should have asked more specific questions because he was aware of the details of the alleged takings, having questioned both Myron Olson and Gilbert Brazo in front of the grand jury prior to examining defendant. As we have not been provided with the record of the grand jury proceedings, we cannot determine what details the prosecutor knew at the time of examining defendant. In any event, the prosecutor's questions were sufficiently specific to alert defendant to the scope of the inquiry under *Bronston v United States,* 409 US 352; 93 S Ct 595; 34 L Ed 2d 568 (1973), cited by defendant. *Bronston* dealt with the problem of a witness's literally true but unresponsive answers. In reversing defendant Bronston's perjury conviction, the United States Supreme Court held that defendant could not be convicted where he told the literal truth, it being the questioner's burden to pin the witness down to the specific object of the inquiry. By no stretch of the imagination can defendant's unequivocal denials herein that he took anything from Montgomery Ward be conceived as literally true but unresponsive answers.

Finally, defendant contends that the 19-month delay between his indictment and trial denied him his constitutional right to a speedy trial.[1]

In *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972), the Court set forth a balancing test containing four factors to be weighed in evalu-

---

[1] US Const, Am VI.

ating a speedy trial claim: (1) the length of the delay; (2) the reason for the delay; (3) defendant's assertion of his right; and (4) prejudice to defendant. Under Michigan law, prejudice to defendant is presumed after a delay of 18 months or more. *People v Grimmett,* 388 Mich 590, 606; 202 NW2d 278 (1972), *People v Collins,* 388 Mich 680, 690; 202 NW2d 769 (1972), *People v Den Uyl,* 320 Mich 477; 31 NW2d 699 (1948). According to this Court in *People v Bennett,* 84 Mich App 408, 411; 269 NW2d 618 (1978), "[t]he presumption is conclusive unless the prosecutor is able to demonstrate lack of prejudice to the defendant. Even so, 'an affirmative demonstration of prejudice [is not] necessary to prove a denial of the constitutional right to a speedy trial'. *Moore v Arizona,* 414 US 25, 26; 94 S Ct 188, 189; 38 L Ed 2d 183, 185 (1973), *citing Barker v Wingo, supra."*

The record herein shows that there was a 19-month delay between defendant's indictment and first trial, which ended in a mistrial, and a further four-month delay between the mistrial and defendant's second trial. Thus, there was a two-year period between defendant's indictment and conviction. Although the length of delay was substantial, in *Grimmett,* defendant's conviction was upheld despite a 19-month delay. Nor did the Supreme Court find a violation of the defendant's right to speedy trial due to the five-year delay in *Barker v Wingo, supra.* Length of the delay is only one factor to be considered.

Several reasons for the delay have been advanced by the people. This case was part of a protracted criminal investigation and prosecution of police corruption. Defendant, at the time of his indictment, was charged with two other offenses: larceny in a building and breaking and entering.

Several months were necessary to conduct preliminary investigations on each offense. The prosecutor elected to try defendant first on the larceny in a building charge. That trial was held on March 9 and 10, 1977, resulting in acquittal. It further appears that defendant requested an adjournment of the pretrial conference, resulting in a one-week delay, and that the judge originally assigned to hear the case disqualified himself in December of 1976. Finally, defendant's original trial, held in November, 1977, resulted in a hung jury and the case was immediately set for retrial. Defendant was ultimately retried and convicted on March 10, 1978.

In *Collins, supra,* it was held that, where defendant was also charged with another offense and the prosecutor elected to try him first on the other charge, delay could be charged to the defendant. 388 Mich 680, 690. However, the people do not explain the reason for the delay from March 10, 1977, until defendant's first trial on the perjury charge on November 15, 1977. It appears then, that much of the delay is attributable to the prosecutor.

The record in the case at bar indicates that defendant did not assert his right to a speedy trial until November 1, 1977, almost 19 months after his indictment and two weeks prior to trial. Defendant's argument that it was reasonable to wait 19 months in order to invoke presumption of prejudice under *Collins, supra,* is untenable. Obviously, defendant, in delaying almost until the trial date, was not attempting to get a speedy trial but to get the charges against him dismissed.

Finally, the prosecutor has rebutted the presumption of prejudice to defendant. Defendant was free on bond, so there was no oppressive pretrial

incarceration. Defendant's allegation that the change in the testimony of Gilbert Brazo, a prosecution witness, on retrial jeopardized defendant's defense is meritless. The witness previously testified that he and defendant removed merchandise from Montgomery Ward in December, 1972, but later recalled that those activities occurred in December, 1971. Defendant was aware of this intended change of testimony over a month before retrial and at retrial defense counsel attempted to impeach Brazo by showing he had changed his story. Far from prejudicing defendant, the change in testimony helped defendant to impeach one of the prosecutor's principal witnesses. In balancing all the factors, we find that, despite the delay, defendant's failure to assert his right until late in the proceeding and the lack of apparent prejudice justify the conclusion that defendant was not denied his right to a speedy trial.

Defendant's other issue is without merit.

Affirmed on Count I, reversed on Count II, and remanded for resentencing.