## PEOPLE v. ARNTSON.

1. CRIMINAL LAW—WARRANT—SWORN COMPLAINT—JURISDICTION OF MAGISTRATE.

   Positive statements as to commission of a crime, contained in sworn complaint purporting to be made upon the knowledge of the affiant, gives the magistrate jurisdiction to issue a warrant, the fact that it does not appear that there was no examination of witnesses under oath or that the complainant had not adhered to the truth being insufficient to avoid the warrant; and, once issued, the warrant cannot later be impeached for lack of knowledge of the complaining witness.

2. SAME—CREDIBILITY—COURT OF APPEALS.

   The credibility of testimony presented in a prosecution for assault with intent to commit rape is solely for the jury, and its view that inconsistencies or contradictions did not establish perjury on the part of some witnesses may not be disturbed by the Court of Appeals (CLS 1961, § 750.85).

3. SAME—INSTRUCTIONS—FAILURE OF DEFENDANT TO TESTIFY.

   Charge to jury that defendant had the right to take the witness stand and testify in his own behalf if he chose to do so, that

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arrest §§ 7, 13, 15.
[2] 30 Am Jur 2d, Evidence § 1124.
[3, 4] 29 Am Jur 2d, Evidence § 189; 53 Am Jur, Trial §§ 699, 700.
[5] 21 Am Jur 2d, Criminal Law § 239.

no presumption adverse to defendant was to arise from the sole fact he did not offer himself as a witness and testify on his own behalf, and that his failure to testify could not be considered by the jury as evidence either of his guilt or innocence was proper.

4. SAME—INSTRUCTIONS.
   Giving instruction that defendant has a right not to take the stand in his own behalf and that no inference can be drawn from his failure to take the stand is discretionary with the trial court on its own volition, and it is error not to give it on request.

5. SAME—TRIAL—ACCUSED'S ATTIRE IN COURT.
   Appearance of defendant in jail uniform and barefoot *held,* not to have discredited defendant to any degree where the appearance was before a judge and not before the jury in prosecution for assault with intent to commit rape (CLS 1961, § 750.85).

Appeal from Kent; Vander Ploeg (Claude), J. Submitted Division 3 January 8, 1968, at Grand Rapids. (Docket No. 2,070.)   Decided April 2, 1968.

Dale Arntson was convicted of assault with intent to commit rape. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, and *S. J. Venema,* Assistant Prosecuting Attorney, for the people.

*Dale Arntson, in propria persona.*

J. W. FITZGERALD, P. J.   The defendant, Dale Arntson, appeals his conviction by a jury of the crime of assault with intent to commit rape, CLS 1961, § 750.85 (Stat Ann 1962 Rev § 28.280).   He was acquitted of the crime of rape, charged in the same information, CLS 1961, § 750.520 (Stat Ann 1954 Rev § 28.788), and now comes to this Court *in*

*propria persona* alleging numerous errors in his conviction on the former charge.

Defendant includes no statement of facts in his brief, and while he may quarrel with the statement of facts furnished by the people, accurate tally with the transcript reveals that the basic framework of the events leading to the prosecution is found therein.

Following are the facts that have been presented to the Court in narrative form:

On October 31, 1965, at approximately 2:50 a.m., Officer Hoatlin and his partner on patrol received orders to proceed to the area of the intersection of Division avenue and Cherry street in the city of Grand Rapids. They were informed that an anonymous person had reported a fight in that area; upon their arrival at the intersection, they were unable to find anyone in the area so they drove around the block. Near the intersection of Oakes and Division, they were informed by a pedestrian that 2 people had gone into a nearby alley. The officers ran into the alley and discovered the defendant and the victim in the rear entrance passage of a building a short distance from Oakes street. They observed the defendant crouching between the victim's legs; he was pulling up his trousers which were down below his knees. The woman's dress was up around her waist and her underpants were around her right foot. The victim exclaimed, "He raped me".

The victim, the divorced mother of 4 children, testified that she had been in a bar on Division avenue several blocks south of the scene of the rape; she had had an argument with the man she had been dating and had left the bar intending to go to a restaurant in the center of the downtown business district. After walking several blocks, she heard footsteps behind her and started walking faster.

She stated that after walking a short distance on Division, north of Oakes street, she was knocked over a chain link fence by the defendant and was dragged to the rear of a nearby building where he forcibly had sexual relations with her. The victim also testified that he had beaten her and threatened to kill her if she didn't cooperate. Dr. Fricke, who treated the victim at Saint Mary's Hospital, testified that she had a cut in the corner of her mouth which required stitches and sutures and other abrasions about the face and body.

Witness for the people David L. Shank testified that he observed a man and a woman walking north on Division avenue; the man was walking behind the woman. His attention was drawn to these people when he observed the woman make a gesture which indicated annoyance with the man's actions. He drove around the block, parked his car, and walked across a parking lot to a spot a short distance from where the officers discovered the defendant and victim. He testified that he heard a woman's voice "hollering and moaning" and saying: "No, no". He went back to Oakes street where he informed the police officers of what he observed in the alley.

The police officers put the defendant under arrest and the next day, November 1, 1965, on the basis of information supplied by witness Shank and Officer Hoatlin, Officer Sweetland, assigned to investigate the matter, swore to a complaint and a criminal warrant was issued by police court Judge Robert M. Verdier.

In order that we may consider each allegation of error, we shall consider the individual allegations, paraphrased in some instances to reach the true legal issue and other times stated as defendant states them *pro se.*

Defendant states that the complaining witness was incompetent, "who did not have any knowledge, belief, information * * * but signed a complaint because of the defendant's appearance." The record belies this contention.

Officer Sweetland appears to have sufficient knowledge of the alleged acts and his signature on the complaint may not now be challenged on this ground. The case of *People* v. *Davis* (1955), 343 Mich 348, 355, adequately disposes of the matter, citing *People* v. *Mosley* (1953), 338 Mich 559, 564, in the following language:

"This Court in *People* v. *Lynch* (1874), 29 Mich 274; *Potter* v. *Barry Circuit Judge* (1909), 156 Mich 183; and *People* v. *Czckay* (1922), 218 Mich 660, settled the question that a complaint which, upon its face, purports to be made upon the knowledge of the affiant, is a sufficient compliance with the statute, and that it is incompetent for a defendant, upon arraignment, to impeach the complaint by showing a lack of knowledge by the complaining witness. The positive statements made upon the oath of the complainant gives the magistrate jurisdiction to issue the warrant. The fact that 'it does not appear there was no examination of witnesses under oath,' or that the complainant did not adhere to the truth, cannot avoid a warrant. *People* v. *Hare* (1885), 57 Mich 505, and *People* v. *Schottey* (1887), 66 Mich 708. Jurisdiction having attached for the issuance of the warrant, it could not be later impeached. *Potter* v. *Barry Circuit Judge, supra.*"

Authority cited for the proposition as contended by the defendant, that the complaining witness was incompetent, leans largely upon search warrant cases, specifically *People* v. *Effelberg* (1922), 220 Mich 528, and are not authority here.

Defendant devotes a large portion of his brief to charges of perjury, but sifted out, the examples

given cannot be so designated. He contends that because inconsistencies appear in the testimony offered, the witnesses committed perjury, citing as authority *Mooney* v. *Holahan* (1935), 294 US 103 (55 S Ct 340, 79 L Ed 791, 98 ALR 406). While we recognize that this case stands for the proposition that the constitutional requirement of due process is not satisfied where a conviction is obtained by the presentation of testimony known to the prosecuting authorities to be perjured, we cannot determine this holding to be applicable in the instant case.

Examples of what defendant calls perjury run in the following vein:

From pages 10–11 of the transcript, Officer Hoatlin being questioned under oath:

"*Q*. Did you walk up to the people?
"*A*. Yes, we did.

From page 12, same witness:

"*Q*. You walked up to the scene where the two people were, is that it?
"*A*. Yes, we ran up.
"*Q*. You ran up?
"*A*. Yes.

Of Officer Steele's testimony, defendant offers this random example from page 161 of the transcript, Officer Steele being questioned under oath:

"*Q*. Now, in any investigation you made, did you find anyone who confirmed her statement that she yelled or screamed at that time?
"*A*. Mr. Shank.

On page 166:

"*Q*. There isn't anything in any report you have written up about this case that said anything about Mr. Shank saying he heard a load moan, is there?
"*A*. A loud moan?

"*Q.* Yes.

"*A.* No.

. "*Q.* Or scream or a yell?

"*A.* No."

A close examination of the record, coupled with defendant's brief, reveals no deliberate false statements which would bring the declarant within the perjury statutes. Perjury, we observe, is one thing; inconsistency such as we have here, another. There is no indication that the scope of cross-examination was limited at any juncture when the question of such inconsistencies arose. They could have been explored fully during the course of the trial, presenting no need for such out-of-context presentations as are brought to this Court.

. At best, the inconsistencies might have inured to defendant's benefit in affecting the credibility of the witness. The jury, however, in their time-honored function of resolving the issue of credibility, reached a verdict of guilty. See *People* v. *Franszkiewicz* (1942), 302 Mich 144. See, also, *People* v. *Pettijohn* (1938), 283 Mich 108.

As stated in the syllabus of *People* v. *Schram* (1965), 1 Mich App 279, "The credibility of testimony presented in a prosecution for crime is solely for the jury, and its view that contradictions did not establish perjury on the part of some witnesses may not be disturbed by the Court of Appeals."

Defendant assigns further error on instructions by the trial judge, specifically the comment on defendant's right not to take the stand, using the following language:

"Under the laws of this State * * * the defendant had the right to go upon the witness stand and testify in his own behalf if he chose to do so. However, the law expressly provides that no presumption adverse to the defendant is to arise from the mere fact that he does not offer himself as a

witness and testify in his own behalf. Therefore, in this cause, the fact that defendant has not testified in his own behalf should not be permitted by you to prejudice him in any way. He was within his rights in not offering himself as a witness and testifying in his own behalf as the law permits him to either testify or not testify as he may choose. The failure of the defendant to testify in this case cannot be considered by you as evidence either of his guilt or of his innocence."

This instruction, carefully considered, falls within the "no inference" rule set forth in *People* v. *Nankervis* (1951), 330 Mich 17. There appears to be little need for discussion of the fact that the giving of this instruction is discretionary with the trial court on its own volition, and indeed error if not given on request.

Defendant's other allegations of error are a mixed set of out-of-context situations. He alleges that he was made to look like a "villain" before the judge, complainant, and prosecutor by appearing in the cover-all type of jail garb (and being barefooted). This Court and others have passed upon the question of attire on more than one occasion, and this particular instance, not occurring before a jury, appears not to have discredited defendant to any degree. See *People* v. *Shaw* (1967), 7 Mich App 187. See, also, *People* v. *William L. Thomas* (1965), 1 Mich App 118.

Defendant's *pro se* brief is replete with charges of prejudice, illegality, partiality, and similar adjectival epithets directed toward all those connected with his prosecution. We have covered, *supra,* the more lucid ones; the rest have been considered and deemed not to merit discussion.

Affirmed.

BURNS and NEAL FITZGERALD, JJ., concurred.