*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARSHAWN TERRILL GRAFTON,

Defendant-Appellant.

UNPUBLISHED
February 4, 2020

No. 342234
Macomb Circuit Court
LC No. 2016-003474-FC

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LAMICHAEL LEE WARFIELD,

Defendant-Appellant.

No. 342775
Macomb Circuit Court
LC No. 2016-003468-FC

Before: RIORDAN, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

Defendants, Marshawn Terrill Grafton and LaMichael Lee Warfield, appeal as of right their jury convictions of one count first-degree criminal sexual conduct (CSC1), MCL 750.520b, one count kidnapping, MCL 750.349, one count conspiracy to commit kidnapping, MCL 750.349(1)(c); MCL 750.157a, and one count second-degree criminal sexual conduct (CSC2), MCL 750.520C. Defendants were sentenced as fourth offense habitual offenders, MCL 769.12, to 25 years to 50 years' imprisonment for all counts. We affirm in both appeals.

## I. BACKGROUND

Defendants' convictions stem from an incident that took place in May 2015, in the Macomb County Jail involving inmate JW. At the time, JW was 19 years' old and had been an inmate in the Macomb County Jail for approximately one month. JW testified that on May 11, 2015, fellow inmates, Grafton and Warfield, wrapped a sheet over his body and dragged him into Warfield's

-1-

cell. A paper was placed over the cell door window. Defendants stripped JW of his clothes, and rubbed Magic Shave over his chest, abdomen and buttocks. Inmates testified at trial that the incident lasted for approximately 45 minutes. Guards testified that they conducted rounds every 55 minutes as usual and had not noticed anything out of the ordinary. After the incident, JW dressed and ran to a friend's cell. Defendants called JW back into Warfield's cell to threaten him not to talk about the incident. Later that day, JW pressed the emergency button in his cell and told guards what had occurred earlier with the defendants. The jail was put on lockdown and JW was taken out of the general population. Defendants were later charged but those charges were dismissed when JW, who had been released from jail, could not be located by the prosecution. Charges were reauthorized approximately five months later when JW's whereabouts were discovered. Defendants were convicted by a jury of one count CSC1, one count CSC2, one count kidnapping, and one count conspiracy to commit kidnapping.

## II. DEFENDANTS' SUFFICIENCY OF EVIDENCE CLAIMS

In Docket No. 342234, defendant Grafton argues there was insufficient evidence of the requisite sexual intent to support his convictions for CSC and that he is entitled to a new trial where the verdict was against the great weight of the evidence.

In Docket No. 342775, defendant Warfield argues that the trial court erred in denying his motion for directed verdict where there was insufficient evidence to support the CSC charges against him because JW's testimony was incredible and there was no sexual contact.

### A. STANDARD OF REVIEW

We review sufficiency of the evidence claims de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). "Taking the evidence in the light most favorable to the prosecution, the question on appeal is whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002). We resolve conflicts in the evidence in the prosecution's favor. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). "Circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of the elements of the crime." *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010) (citation and alteration omitted). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Hardiman*, 466 Mich at 428.

Unpreserved challenges to the sufficiency of the evidence are reviewed for plain error affecting the defendant's substantial rights. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003).

### B. ANALYSIS

"The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Id.* at 218-219. "It is the province of the jury to determine questions of fact and assess the credibility of witnesses." *People v Lemmon*, 456 Mich. 625, 637; 576 NW2d 129 (1998). A verdict may be vacated only when it "does not find reasonable support in the evidence, but is more likely to be attributed to causes outside the record such as passion,

prejudice, sympathy, or some extraneous influence." *People v DeLisle*, 202 Mich App 658, 661; 509 NW2d 885 (1993) (citation omitted).

Both defendants only appear to challenge the evidence related to the CSC crimes and argue that if the evidence to support those convictions is insufficient, then the accompanying kidnapping charges fail as well.

> A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:
>
> . . . (c) Sexual penetration occurs under circumstances involving the commission of any other felony [here, kidnapping] [or]
>
> (d) The actor is aided or abetted by 1 or more other persons and either of the following circumstances exists:
>
> . . . (*ii*) The actor uses force or coercion to accomplish the sexual penetration. . . . [MCL 750.520c(1)(c)(d)(*ii*)].
>
> A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:
>
> . . . (c) Sexual contact occurs under circumstances involving the commission of any other felony [here, kidnapping].
>
> (d) The actor is aided or abetted by 1 or more other persons and either of the following circumstances exists:
>
> … (*ii*) The actor uses force or coercion to accomplish the sexual contact. [MCL 750.520c].

Any entry, no matter how slight, will satisfy the element of penetration for CSC1. *People v Hunt*, 442 Mich 359, 364; 501 NW2d 151 (1993); MCL 750.520(a)(1). In reference to CSC2,

> "Sexual contact" includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for:
>
> (*i*) Revenge.
>
> (*ii*) To inflict humiliation.
>
> (*iii*) Out of anger. [MCL 750.520a(q)].

"[W]hen determining whether touching could be reasonably construed as being for a sexual purpose, the conduct should be viewed objectively under a reasonable person standard." *People v DeLeon*, 317 Mich App 714, 719-720; 895 NW2d 577 (2016) (quotation marks and citation omitted). "Intimate parts" includes a person's "genital area, groin, inner thigh, buttock, or breast." MCL 750.520a(f). Force or coercion include "[w]hen the actor overcomes the victim through the actual application of physical force or physical violence" or "[w]hen the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats." MCL 750.520b(1)(f)(*i*) and (*ii*).

Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence for a rational jury to find defendants guilty beyond a reasonable doubt of CSC1 and CSC2. JW's testimony, that one of the defendants, presumably Grafton, inserted a finger into his anal opening at least once, was sufficient to prove sexual penetration and sexual contact. A jury could infer that the Magic Shave was applied for a sexual purpose when it was applied to JW's buttocks and genital area directly before he was anally penetrated. Warfield's conduct of helping to remove JW's clothing, holding him up against the wall while Grafton put on a latex glove, and putting weight on JW's back to bend him over so that Grafton could digitally penetrate him sufficed as aiding and abetting Grafton. JW's testimony about being thrown around the room, held up against the wall, beaten, tied, and bent over established that the penetration was accomplished by force. Defendants also used coercion to accomplish the penetration where Grafton grabbed a razor from a desk, stuck it up to JW's neck, and threatened, "shit on my dick, blood on my blade" as if giving him a choice between either being anally penetrated or sliced with a razor. Defendants' statements to JW that "they were going to teach [him] a lesson" and to Provenzio, that JW "deserved it" because he "was a rat or a snitch," indicated the sexual assault was as an act of revenge.

Viewing the evidence in the light most favorable to the prosecution, it was also sufficient for a rational jury to find the defendants guilty beyond a reasonable doubt of kidnapping JW.

(1) A person commits the crime of kidnapping if he or she knowingly restrains another person with the intent to do 1 or more of the following:

. . .(c) Engage in criminal sexual penetration or criminal sexual contact prohibited under chapter LXXVI with that person.

(2) As used in this section, "restrain" means to restrict a person's movements or to confine the person so as to interfere with that person's liberty without that person's consent or without legal authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts. [MCL 750.349].

In order to sexually assault JW, Warfield and Grafton wrapped a sheet over his head from behind and dragged him into Warfield's cell. A shade was put over the cell window to hide what they were doing from other inmates and patrolling deputies. JW's wrists and ankles were bound with rope as the defendants applied Magic Shave. The rope restraints were undone and replaced with Warfield's physical restraint of JW so Grafton could digitally penetrate him from behind. The

jury could infer from this evidence that defendants knowingly restrained JW with the intent to engage in sexual penetration or sexual contact with him.

Both defendants argue the lack of any DNA evidence or evidence corroborating JW's testimony as proof of there being insufficient evidence of CSC. However, the complainant's testimony alone was sufficient to sustain the CSC convictions. *Musser*, 259 Mich App at 219. Our Legislature has deemed that "[t]he testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g," which includes defendants' prosecutions under 520b and 520c. MCL 750.520h. Defendants also point to the inconsistencies in JW's testimony as reasons for the evidence being insufficient to support the jury verdict. However, "it is not permissible for a trial court to determine the credibility of witnesses in deciding a motion for directed verdict of acquittal, *no matter how inconsistent or vague that testimony might be*." *People v Schultz*, 246 Mich App 695, 702; 635 NW2d 491 (2001) (internal quotation omitted). In reviewing a sufficiency of evidence claim, the court resolves all conflicts in the evidence in favor of the prosecution. *Kanaan*, 278 Mich App at 619.

We conclude that the court did not err in denying defendants' motion for directed verdict where the evidence above was available to the court at the time the motion was decided and was sufficient at that time to sustain convictions for CSC and kidnapping. Considering the same evidence reasonably supported the jury's verdict, the verdict was also not against the great weight of the evidence.

### III. DEFENDANTS' SPEEDY TRIAL CLAIMS

In Docket Nos. 342234 and 342775, defendants argue that their right to a speedy trial was violated thereby entitling them to a new trial.

### A. ISSUE PRESERVATION AND STANDARD OF REVIEW

"A defendant must make a formal demand on the record to preserve a speedy trial issue for appeal." *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999) (quotation marks and citation omitted). Grafton filed a motion to dismiss on speedy trial grounds, below while Warfield's first time raising this issue is on appeal.

"Whether defendant was denied his right to a speedy trial is an issue of constitutional law, which we . . . review de novo." *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). The court's factual findings are reviewed for clear error. *Id.* "A factual finding is clearly erroneous when the reviewing court, on the whole record, is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 502 Mich 541, 582; 918 NW2d 676 (2018) (quotation marks and citation omitted). Unpreserved speedy trial issues are reviewed for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

### B. ANALYSIS

A criminal defendant has a constitutional and statutory right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20; MCL 768.1. "Michigan courts apply the four-part balancing test articulated in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to determine

if a pretrial delay violated a defendant's right to a speedy trial." *Cain*, 238 Mich App at 112. The four factors to be considered are: "(1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant." *People v Williams,* 163 Mich App 744, 755; 415 NW2d 301 (1987).

As for the first factor, "[t]he time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). A delay of fewer than 18 months requires the defendant to demonstrate prejudice. *Cain*, 238 Mich App at 112. "A delay of more than eighteen months is presumed to be prejudicial and the burden is on the prosecution to prove lack of prejudice to the defendant." *People v Wickham*, 200 Mich App 106, 109; 503 NW2d 701 (1993). A "presumptively prejudicial delay triggers an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial." *Id*. at 109-110. "Although delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment, or a claim under any applicable statutes of limitations, *no Sixth Amendment right to a speedy trial arises until charges are pending*." *United States v MacDonald*, 456 US 1, 7; 102 S Ct 1497; 71 L Ed 2d 696 (1982). "Once charges are dismissed, the speedy trial guarantee is no longer applicable." *Id*. at 8. In accord with *MacDonald*, because defendants' charges were dismissed in March 2016, the delay is calculated from the date of their reauthorization, which was August 29, 2016. Trial began on October 31, 2017, making the delay less than 18 months (one year, two months, and two days), and placing the burden on defendants to show they were prejudiced by the delay.

"There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to his defense." *People v Collins*, 388 Mich 680, 694; 202 NW2d 769, 776 (1972). "Prejudice to his person would take the form of oppressive pretrial incarceration leading to anxiety and concern." *Id*. Grafton argues that he "endured over two and a half years of anxiety and concern with [sic] accompanied the public accusation that he committed a sexual act on another male inmate." "[A]nxiety, alone, is insufficient to establish a violation of defendant's right to a speedy trial," *People v Gilmore*, 222 Mich App 442, 462; 564 NW2d 158 (1997), and "[e]very incarceration results in a degree of prejudice to the person, *Collins*, 388 Mich at 694. "Impairment of defense is the most serious, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. (Quotation marks and citation omitted). Grafton fails to assert how any particular witness was unavailable to him at the time of trial due to lack of memory. Accordingly, Grafton's speedy trial argument fails. Because Warfield adopted Grafton's argument by incorporation, the failure of Grafton's claim necessarily means the failure of Warfield's claim.

## IV. WARFIELD'S ADDITIONAL CLAIMS OF ERROR

In Docket No. 342775, Warfield additionally argues prosecutorial misconduct and evidentiary error.

## A. PROSECUTORIAL MISCONDUCT

### 1. ISSUE PRESERVATION AND STANDARD OF REVIEW

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant did not object below to JW's testimony or the prosecutor's questioning of him regarding the razor.

"This Court reviews claims of prosecutorial misconduct case by case, examining the remarks in context, to determine whether the defendant received a fair and impartial trial." *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001). Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting the defendant's substantial rights. *Id*. This Court "cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003).

## 2. ANALYSIS

Warfield argues that JW testified at the preliminary examination that defendants did not use a razor blade during the incident, but then changed his testimony at trial to add the use of a razor blade. Warfield argues JW therefore perjured himself at trial and that the prosecutor's failure to correct JW's testimony constituted prosecutorial misconduct.

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Rice*, 235 Mich App 429, 434; 597 NW2d 843 (1999). "[P]rosecutorial misconduct consisting of the knowing use of false evidence or perjured testimony violates a defendant's due process rights guaranteed by the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 395; 764 NW2d 285 (2009). A prosecutor has "a constitutional obligation to report to the defendant and to the trial court whenever government witnesses lie under oath." *People v Lester*, 232 Mich App 262, 276; 591 NW2d 267 (1998). However, the defendant is entitled to a new trial only if the false testimony "could. . . in any reasonable likelihood have affected the judgment of the jury." *Napue v Illinois,* 360 US 264, 271–272; 79 S Ct 1173; 3 L Ed 2d 1217 (1959).

We reviewed the preliminary examination and trial transcripts, and we conclude that the prosecutor did not commit misconduct. JW's trial testimony was inconsistent from what he testified to at the preliminary examination regarding defendants' use of a razor blade. He blamed the inconsistency on confusion, stress and lack of memory. Mere inconsistencies in testimony do not establish perjury. See *People v Arntson*, 10 Mich App 718, 724; 160 NW2d 386 (1968); see also *People v Cash*, 388 Mich 153, 162; 200 NW2d 83 (1972) (perjury is established by showing the truth of the contradiction; it is not enough simply to contradict it). "Witness credibility and the weight accorded to evidence is a question for the [trier of fact][.]" *People v McGhee*, 268 Mich App 600, 624; 709 NW2d 595 (2005). Further, the jury is free "to believe, or disbelieve, in whole or in part, any of the evidence presented." *People v Fuller*, 395 Mich 451, 453; 236 NW2d 58 (1975). JW asserted that he was telling the truth at trial. There was no evidence that the prosecutor attempted to conceal the contradictions. In fact, Warfield's counsel thoroughly flushed out the inconsistencies in JW's testimony to impeach his credibility before the jury.

## B. EVIDENTIARY ERROR

## 1. STANDARD OF REVIEW

"We review a trial court's decision to allow leading questions for an abuse of discretion." *In re Susser Estate*, 254 Mich App 232, 239; 657 NW2d 147 (2002). "An abuse of discretion occurs when trial court's decision is outside the range of principled outcomes." *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014). "Questions whether a defendant was denied a fair trial, or deprived of his liberty without due process of law, are reviewed de novo." *People v Steele*, 283 Mich App 472, 478; 769 NW2d 256 (2009). "[R]eversal is not required simply because leading questions were asked during trial. In order to warrant reversal, it is necessary to show some prejudice or pattern of eliciting inadmissible testimony." *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001) (quotation marks and citation omitted).

## 2. ANALYSIS

Warfield argues that the prosecution elicited testimony about the penetration element of first-degree CSC by asking JW leading questions.

The testimony in context was as follows:

*Prosecutor*.  Okay.  What happened after that?

*JW*.  After that, I remember feeling some, something placed into my buttocks.

*Prosecutor*.  All right.  So you felt something in your buttocks?

*JW*.  Yeah.

*Prosecutor*.  Could you see who was behind you at that point?

*JW*.  Yes.

*Prosecutor*.  Who was behind you?

*JW*.  Mr. Grafton.

*Prosecutor*.  **And you said you felt something in your buttocks. Did you feel something in your actual anal, the anal opening of your buttocks?**

*JW*.  Yes.

WARFIELD'S COUNSEL:  Leading, your Honor. Objection.

THE COURT: Well, all right. I'll allow it.  Go ahead.

Reversal is not warranted because the question identified was not leading.  A "leading question" is one "that suggests the answer to the person being interrogated...." Black's Law Dictionary (9th ed), p 969.  "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony."  MCR 611(d)(1). Warfield's claim that the first question was leading because the prosecutor was the first to testify concerning penetration does not comport with the record.  JW first testified, "that, I remember feeling some, something placed into my buttocks."  The prosecutor's next question was a follow-

-8-

up and clarification as where in the buttocks JW felt something was placed. We note that even had this one question been an improper leading question, Warfield fails to establish that this one question prejudiced him or denied him a fair trial.

Affirmed.

/s/ Michael J. Riordan
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens